ATLANTIC COAST LINE R. CO. v. TILLER.

No. 5217.

Circuit Court of Appeals, Fourth Circuit.

May 15, 1944.

Collins Denny, Jr., of Richmond, Va. (J. M. Townsend, of Petersburg, Va., on the brief) for appellant.

J. Vaughan Gary, of Richmond, Va. (Dave E. Satterfield, Jr., of Richmond, Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This case, now before us for the second time, relates to the accidental death of John Lewis Tiller, a sergeant of railroad police, while engaged in the performance of his duties in the Clopton freight yard of the Atlantic Coast Line Railroad Company near Richmond. In our former opinion (128 F.2d 420) we affirmed the action of the District Court at the first trial in directing a verdict for the defendant carrier on the ground that the evidence disclosed no negligence on its part. We recognized that the common law defense of assumption of the risk was eliminated in cases under the Federal Employers' Liability Act when § 4 of the Act was amended in 1939, 45 U.S.C.A. § 54, so as to provide that in any action brought under the Act to recover against a carrier for the injury or death of an employee of the carrier, such employee shall not be held to have assumed the risk of his employment where his injury or death resulted in whole or in part from the negligence of any of the officers, agents or employees of the carrier. But we concluded that no recovery from the carrier could be had because the evidence did not indicate any negligence on its part but rather that the accident resulted from the negligence of the deceased or from his exposure to the risks which are inherent in the business of railroading notwithstanding the performance by the carrier of its duty to its men. In so doing we interpreted the amended statute to mean that while an employee of a carrier does not assume the risk of his employment in any case where injury or death results from the carrier's negligence, he does assume the risk of injury which results not from his employer's negligence but from the intrinsic nature of his dangerous occupation.

No one saw the accident but the evidence at the first trial warranted the inference that the accident occurred under the following circumstances: Every evening the carrier operated a freight train from Richmond to the South which was made up at the Clopton Yard. Tiller had been a member of the Railroad Police Force for sixteen years and for a number of years had been assigned to the protection of this train. He was engaged in this work about 7 P.M. on March 20, 1940 when he was hit by the head car of three cars that were being pushed in a northerly direction by the road engine in a slow back-up movement in the course of the shifting operations. The tracks ran north and south at the point of the accident and Tiller was standing between two of the tracks or on the more westerly of the two tracks, while using a flashlight to examine the seals on the doors of the cars on the track to the east without observing that the three cars in the back-up movement were approaching him on the track to the west. The night was dark and the yard was unlighted. There was no light on the head car of the back-up movement except that a brakeman holding a lighted lantern was riding on the step at the northwest corner of the car in order to protect a cross highway known as Clopton Road which the cars were about to cross. The bell of the engine was ringing.

The shifting of cars in the freight yard was a necesssary and customary operation in the make up of the train; and the carrier's employees had been instructed that they must watch out for the movement of

the trains as no employee watches out for them and no lights are used at night on the head end of back-up movements except when an employee is placed at the back end with a lantern to protect a road crossing. In regard to this practice it was expressly stipulated at the second trial in the District Court, now under review, that both in their large and most active yards and in their smaller and less active yards railroads make it a practice not only to pull cars with the locomotive in the lead position but also to push cars with the locomotive in the rear position of the movement. When cars are thus pushed it is not the practice of railroads to place on the lead end of the movement a headlight similar to that carried by a locomotive or otherwise to light the lead end of the back end movement. Sometimes for a special purpose a man carrying a lantern may ride on the lead end of the movement. Cars are not only pushed with the engine running forward but also with the engine running in reverse.

Upon our affirmance of the judgment of the District Court at the first trial, the Supreme Court granted certiorari and reversed, Tiller v. Atlantic Coast Line, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A. L.R. 967. The court made it clear (318 U.S. at page 58, 63 S.Ct. at page 446, 87 L.Ed. 610) that "every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment, and that Congress, by abolishing the defense of assumption of risk in that statute, did not mean to leave open the identical defense for the master by changing its name to 'non-negligence'"; and the court held (318 U.S. at page 68, 63 S.Ct. at page 451, 87 L.Ed. 610) without specifying the particulars wherein the defendant had failed to perform its duty, that upon the facts recited "the question of negligence on the part of the railroad and on the part of the employee should have been submitted to the jury."

Since the evidence at the second trial in respect to the movement of the cars was substantially the same as at the first, this decision required the District Judge notwithstanding the opposition of the defendant to submit the case to the jury. Our duty upon this appeal to affirm the judgment of $22,500 for the plaintiff based upon the verdict would have been equally clear if the plaintiff had been content at the second trial to rest upon the legal theory

outlined in the opinion of the Supreme Court; but the plaintiff amended the complaint by specifying a new item of negligence which was submitted to the jury as an alternative ground for recovery. Since the verdict for the plaintiff was general and did not specify the ground on which it rested, it becomes necessary for us to determine whether there was sufficient evidence to justify the submission of this new theory to the jury over the defendant's objection.

The plaintiff was permitted to amend the complaint at the second trial so as to add the allegation that the carrier had violated the provisions of the Federal Boiler Inspection Act, 45 U.S.C.A. § 22 to § 34, by using a locomotive which was in improper condition and unsafe to operate in that it did not have proper lights between sunset and sunrise, as prescribed by the rules of the Interstate Commerce Commission promulgated pursuant to the statutes. One of these rules makes the following provision:

"131. Locomotives used in Yard Service.—Each locomotive used in yard service between sunset and sunrise shall have two lights, one located on the front of the locomotive and one on the rear, each of which shall enable a person in the cab of the locomotive under the conditions, including visual capacity, set forth in rule 129, to see a dark object such as there described for a distance of at least 300 feet ahead and in front of such headlight; and such headlights must be maintained in good condition."

The road engine that was pushing the cars that injured Tiller did not have such a light on its rear end as is described in the rule but only a small electric bulb situated on the top of the tender below the top of the cars that were being pushed.

The defendant objected to the allowance of the amendment on the ground that it did not charge an act of common law negligence but the violation of a statutory duty and therefore set up a new cause of action which was barred by the expiration of three years period of limitations imposed by the Federal Employers' Liability Act. We do not need to consider this question in the view we take of the subsequent developments of the case. At the conclusion of the evidence the court charged the jury that the defendant owed to Tiller the general duties to exercise ordinary care to furnish its employees a reasonably safe

place of work and to give adequate warning of any unusual or unexpected movement in making up its trains, and that if the jury believed from the evidence that the defendant failed to perform either of these duties and as the proximate result of such failure Tiller received the injuries from which he died, then the verdict should be for the plaintiff.

In addition the court charged the jury that it was the duty of the defendant to obey the rules promulgated by the Interstate Commerce Commission pursuant to the Federal Boilers Inspection Act; and that if the road engine of the defendant was being used at the time of the injury to classify the cars and make up a train, it was being used in yard service within the meaning of the rule, and if the jury believed from the evidence that Tiller was struck by a car pushed in yard service by a locomotive that did not have a rear light, as prescribed by the rule, and as a proximate result of this failure Tiller received fatal injuries, the verdict of the jury should be for the plaintiff.

At the end of the plaintiff's case and at the end of the whole case, the defendant moved for a directed verdict upon the specific grounds, amongst others, that the evidence disclosed no violation of the Boiler Inspection Act or of the rules promulgated thereunder because the locomotive in question was not being used in yard service at the time of the accident; and also upon the ground that even if the locomotive was then being used in violation of the rule there was no evidence to show that the violation was the proximate cause of the accident. The defendant also moved to strike out the amendment of the complaint and the evidence in respect to the Boiler Inspection Act. All these motions were overruled and the correctness of the charge on this aspect of the case must therefore be considered.

We shall assume that the locomotive, although a road engine, was being used in yard service when, in order to make up the train, it was shifting certain cars while the yard engine was shifting others; but it is still necessary to determine whether the absence of a rear light on the tender of the road engine had any bearing on the accident. The evidence showed that if the tender of the road engine had been equipped with a rear searchlight, it would not have shone out so as to enable a person in the cab to see a dark object on or near the track 300 feet ahead in the direction of the backward movement, as contemplated by the rule. Nor would the light have been visible to one standing at or near the track ahead of the movement. The light would have been obscured by the cars which the engine was pushing because the car next to the tender was higher than a searchlight mounted on top of the tender would have been. Such a light would have shone against the end of the adjacent car and would have been diffused at that point and would not have illuminated the area ahead of the cars.

The plaintiff contends that it would be a violation of Rule 131 for a carrier to permit the headlight of an engine in yard service to be obscured by cars that it is pushing, but this is tantamount to saying that an engine may not push cars in yard service at night unless the head car of the movement is lighted. The evidence shows that the practice of carriers is to the contrary and that no rule forbids it. It follows that even if it be held that the carrier violated Rule 131 on this occasion, the violation had no connection with the accident.

 The Supreme Court said in the pending case and reiterated more recently in Tennant v. Peoria, etc., R. Co., 321 U.S. 29, 64 S.Ct. 409, that in order for an employee to recover under the Federal Employers' Liability Act for injuries suffered, he must prove not only that the carrier was negligent but also that its negligence was the proximate cause of the accident in whole or in part. The plaintiff failed to meet this test insofar as the alleged violation of the Boiler Inspection Act was concerned, and on this account we think that the District Court should have withdrawn this issue from the jury's consideration. The case was submitted on two theories; one of general negligence and one of special negligence growing out of the alleged violation of the statutory rule. Under the decision of the Supreme Court there was substantial evidence to justify the submission of the first question to the jury and to support a verdict in the plaintiff's favor thereon. But in the consideration of this question the defendant was entitled to go to the jury without the stigma that its conduct was forbidden by a rule devised by governmental authority for the safety of railroad employees, and the submission of the second question was prejudicial to the defendant's case.

Furthermore, since the verdict was general, it is impossible to say whether it was based upon the issue that was properly submitted to the jury or upon the issue that should have been withdrawn. The rule to be applied in such a situation is stated in Stokes v. United States, 8 Cir., 264 F. 18, 23, as follows:

"* * * A general verdict under an erroneous instruction cannot be upheld, when there were two theories submitted to the jury, on either of which they might have founded it, under one of which the instruction was harmless, while under the other it was error, because the generality of the verdict renders it impossible to determine upon which theory the jury based it. They may have founded it upon the very issue to which the erroneous instruction related, and that instruction may have controlled and produced their finding. State of Maryland v. Baldwin, 112 U.S. 490, 493, 5 S.Ct. 278, 28 L.Ed. 822; Lyon, Potter & Co. v. First Nat. Bank of Sioux City [8 Cir.], 85 F. 120, 123, 29 C.C.A. 45, 48; Durant Mining Co. v. Percy Consolidated Mining Co. [8 Cir.], 93 F. 166, 169, 35 C.C.A. 252, 255; St. Louis, Iron Mtn. & Southern Ry. Co. v. Needham [8 Cir.], 63 F. 107, 114, 11 C.C.A. 56, 63, 25 L.R.A. 833; What Cheer Coal Co. v. Johnson [8 Cir.], 56 F. 810, 813, 6 C.C.A. 148, 151; Cresswell Ranch & Cattle Co. v. Martindale [8 Cir.], 63 F. 84, 90, 11 C.C.A. 33, 39." See also Wilmington Star Mining Co. v. Fulton, 205 U.S. 60, 27 S.Ct. 412, 51 L.Ed. 708.

■ Certain remaining questions must be considered as they may arise again on a retrial of the case. The first relates to the admissibility of a report of the accident made by the carrier's superintendent of transportation to the State Corporation Commission of Virginia pursuant to State statute, Virginia Code, § 3988. Therein it was stated that Tiller stepped off a yard engine taking a cut of cars to Clopton Yard to be placed in a freight train and that he was standing on the adjacent track looking at the cars as they passed when he was hit by the head car of a back-up movement pushed by a road engine. The defendant brought out through the testimony of the superintendent and other employees that the report was not based upon their personal knowledge or upon information received from any eyewitness of the accident but upon inferences drawn from what was known of Tiller's movements shortly before the accident, and the finding of his body entangled in the wheels of the head car and articles of his equipment nearby. Thus explained, the report added little or nothing to the facts in evidence.

The defendant contends, however, that the report although in the nature of an admission against interest should not have been received in evidence because the federal statute, 45 U.S.C.A. §§ 38 to 41, which requires carriers to make similar reports to the Interstate Commerce Commission expressly provides that the reports shall not be admissible in evidence in any suit growing out of any matter mentioned therein. But this provision was omitted from the Virginia enactment and does not restrict the use of the report to the State Commission; and we do not think that the Act of Congress passed under its power to regulate interstate commerce excludes the state body from the field. On the contrary, the federal statute expressly empowers the Interstate Commerce Commission to cooperate with a State Commission which is investigating an accident within its borders. There was no error in admitting the report in evidence.

■ In the next place the defendant contends that the court erred in that portion of its charge that related to the question whether the movement of the cars that struck Tiller was so unusual and unexpected that it became the duty of the defendant to give him an adequate warning of their approach. In substance, the court charged the jury that if they believed that the back-up movement was an unusual and unexpected one and a departure from the general practice in making up the particular train, and that Tiller had no reasonable cause to believe that such a movement would be made, it became the duty of the defendant to give him adequate warning of the movement and if the jury found that the defendant failed to perform this duty and as the result Tiller was injured, the jury should find a verdict for the plaintiff.

The evidence on the point is somewhat conflicting but there was substantial evidence to show that in making up the train in question the road engine does not usually back cars into the track on or near which Tiller was standing when he was hurt. On the other hand, there was no rule or custom which prohibited such a movement and the evidence showed that the same movement had been performed in the assembly of this nightly train on other occasions and that

the track was in general use and was used for back-up movements for other purposes. Under these circumstances the railroad owed no duty to give a special warning to one as familiar as Tiller with the local situation that the particular movement was about to take place. The instruction therefore should not have been given. The remainder of the charge sufficiently instructed the jury as to the duty of the carrier to look after the safety of its employees by exercising that degree of care which persons of ordinary prudence engaged in the same business exercise under like circumstances.

Objections to actions of the court on other points were also made by the defendant but in our view they involve no error on the part of the court and do not require discussion at this time.

Reversed and remanded.