**Joel RAYBOURNE, Appellant,**

v.

**GULF ATLANTIC TOWING CORPORA-TION and the tug Gatco Carolina,
Appellees.**

**No. 7961.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 12, 1959.

Decided March 14, 1960.

I. H. Jacobson and Harvey M. Spar, Charleston, S. C. (DiCostanzo & Klonsky, and Robert Klonsky, Brooklyn, N. Y., on brief), for appellant.

Harold A. Mouzon, Charleston, S. C. (Moore & Mouzon, and B. Allston Moore, Charleston, S. C., on brief), for appellees.

Before HAYNSWORTH and BOREMAN, Circuit Judges, and THOMSEN, District Judge.

HAYNSWORTH, Circuit Judge.

Raybourne, a seaman, sought compensation, in addition to maintenance and cure, for injuries he claims he suffered in a fall caused by an unseaworthy ladder on the tug, Gatco Carolina, and the negligence of her acting captain. There is agreement that, somehow, one of his ribs was broken. Whether he was otherwise injured, whether he fell when and where he claimed, if at all, the condition of the ladder and the actions of the acting captain, all of these crucial questions of fact were in sharp dispute. The District Judge, who heard and saw the witnesses, found that the facts did not sustain the claim. We cannot say that the findings are clearly erroneous.

The Gatco Carolina had delivered a barge loaded with fuel oil at Georgetown, South Carolina, and was returning with the empty barge to her home port of Charleston, South Carolina, a voyage of some 69 miles, via the intracoastal waterway, when Raybourne sustained some injury. When and how is the question.

Everyone agrees that the tug, with the barge riding high on its starboard side, the tug being approximately amidship the longer barge, ran aground upon an oyster shell bank while crossing Price's Inlet. When it did so, the bowline, a six-inch manila hawser, parted leaving only a breast line and a frayed stern line to the barge. The acting master undertook to back the tug off the bank, but, he said, that, before doing so, he secured a new bowline. Aground, and preparing to go astern, this seems the obvious thing to have done.

Thus far everyone is in agreement, but thenceforward there is wide divergence.

Raybourne, the libellant, was a deckhand. He testified he was ordered to go aboard the barge in order to secure a new bowline. In the execution of this order, he says, he mounted a ladder, lashed to the deckhouse of the tug, to elevate himself to the level of the deck of the barge. He said his foot slipped once as he mounted the ladder and that after turning to the side and while stepping across to the deck of the barge, a distance of some two feet, the tug surged causing him to lose a slippery footing and handhold on the ladder and to sprawl on the deck of the barge. Though stunned by the fall, he said, he shortly picked himself up, proceeded to the bow of the barge, secured the new line to a cleat and returned to the boat. As he returned, he noticed oil on the tug's ladder which he supposed had been left by the shoes of crewmen who had earlier occasion to pass from barge to boat. He also noticed spray on the ladder, which, he said, had come from erupting waters between the boat and the barge when the acting captain had attempted to "horse" the tug off the bank. The surge of the boat, which was, to him, the principal cause of his injury, was the result of this same attempt to "horse" the tug off the bank.

Stoll, the tug's first mate and acting captain, and Summersett, the second mate, testified positively it was Summersett who went aboard the barge to place the eye of the new bowline upon a cleat on the barge while Raybourne remained aboard the boat and made fast the new line to the tug's main bitt in front of her wheelhouse. Summersett says he then noticed that the stern line was frayed. He ran a new line from the barge, dropped the end on the stern of the tug which, after passing from the barge to the boat by way of the ladder lashed to the wheelhouse, he made fast to a bitt on the tug.

Stoll and Summersett agree that no effort was made to back off the bank until the new lines had been run, that, until after the lines were made fast, there was no surging of the boat and nothing occurred to moisten the ladder. Summersett said he had no recollection of the condition of the ladder at the time, but he testified he did not slip as he passed

back and forth and that the decks, generally, were clean and orderly.

Stoll and Summersett said they heard nothing of any injury to Raybourne until he failed to turn to when they prepared to tie up to the dock in Charleston. Summersett and Elliott, a deckhand, testified that, after the boat was backed off the bank and they were again under way, Raybourne went with them to the galley where they made coffee, drank it and talked for thirty minutes to an hour. Summersett then left the group to go to bed. Elliott testified that Raybourne then told him he was going to turn in, too, for he did not feel well.

Raybourne, on the other hand, testified he reported his fall to Stoll as soon as he returned to the boat and that he then went immediately to bed.

■ To find the truth from this conflicting evidence was the province of the District Judge, who heard and saw the witnesses. The fact that the libellant hotly contests the evidence which supports the findings, does not give this Court the power to overturn them.[1]

■ Libellant contends, however, that an entry in the log of the Gatco Carolina forecloses reliance upon the evidence which supports the findings of the District Court. That entry is in the following language:

"INS Excerpt No. 72 passed to Ins & Acctng, June 23/58:

"At approx. 7:30 p. m. 5/31/58 barge No. 72 went aground. While maneuvering boat to pull barge off, Joel Raybourne was slightly injured when stepping off ladder from barge to boat. Complete report will follow. Barge No. 72 was immediately freed, and no damage done."

It may be, under some circumstances, that log entries made by ship's officers who record the events they observe have the force of a deed and may not be denied,[2] but no such finality may be accorded this entry by an absent captain of an intracoastal tug on an intrastate voyage. The entry was made by Captain Baggott, who was not aboard the tug on this voyage, but to whom Raybourne told his version of the events.[3] It was made not in a log, in the usual sense of that word, but on a daily report sheet which was filed and retained in the office of the owner. No such reports were kept aboard the vessel. It was only a report to the owners to inform them of the claim of injury and of possible liabilities for personal injuries as well as for maintenance and cure.[4] It was followed by an accident report, prepared in the owner's office, which differs from the original report in stating that the fall occurred as Raybourne was passing from the boat to the barge, as he now says he was.

At most, these reports were admissions against interest, as the District Court treated them. They were admissible as such, but not conclusive of the fact in the face of substantial evidence to the contrary.

Should we attribute greater weight to these reports it would not aid the libellant.

The District Court found that the fall was not caused either by the condition of the ladder or by a surge of the boat. There is nothing in the reports in conflict with those findings.

The only real issues here are factual. We accept, as we must, the District Court's resolution of them.

Affirmed.

1. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20.

2. The Newfoundland, 176 U.S. 97, 20 S.Ct. 274, 44 L.Ed. 386.

3. Captain Baggott may have talked to Stoll before making the entry or Stoll may have made a rough note which Captain Baggott saw, but this was denied.

4. Maintenance and cure has been paid.