# Richmond

## James R. Moore v. Woodrow W. Warren, Et Al.

November 27, 1961.

Record No. 5297.

Present, All the Justices.

*Richard B. Spindle, III* and *John M. Hollis* (*Willcox, Cooke, Savage & Lawrence*, on brief), for the plaintiff in error.

*James N. Garrett* (*Allen J. Gordon; James N. Garrett, Jr.*, on brief), for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

This is an action for damages sustained by the plaintiff, James R. Moore, when an automobile driven by him collided with a farm tractor-trailer, alleged to be owned by Woodrow W. Warren and Louise Warren, and operated by their agent, Musselwhite.

At the conclusion of the examination of the plaintiff's witnesses, the trial court, on motion of the defendants, struck the evidence on the ground that Moore was guilty of contributory negligence as a matter of law. On further motion of the defendants, summary judgment was entered in their favor. This ruling of the court and the admission in evidence of a pencil·sketch made by one of the witnesses for the plaintiff are the only assignments of error.

The collision occurred on July 27, 1957, about 5:30 p. m., on State Route No. 626, at its intersection with State Route No. 628 near Hickory, Virginia. It was daylight, the weather was clear, the visibility good, and the highways were dry. At the point of the accident, Route No. 626 runs approximately north and south in a rural area. It is intersected on its eastern side at a right angle by Route No. 628. The meeting of the roads forms a "T" intersection, since Route No. 628 ends when it reaches Route No. 626. Route No. 628 curves or "rounds slightly" at the point of its entrance into Route No. 626.

Route No. 626 is straight for 250 yards south of the intersection, and it has a slight rise in grade at the intersection. Both highways are 15 feet wide and both have 2½ feet shoulders on each of their sides, with drainage ditches adjacent to each shoulder.

There were no traffic controls at the intersection, or signs on either road, with the exception of a State highway marker, a small white

post, showing the route numbers, 626 and 628, located on the western side of Route No. 626, almost opposite its junction with 628. On the east side of Route No. 626, the land beyond the right of way near the southern corner of the intersection is approximately 4 feet higher than the road. On this embankment there was, on the day of the accident, a field of corn approximately 7 to 8 feet in height, which extended to the edge of the embankment.

Moore, 44 years of age, was driving from his farm at Hickory to Great Bridge, Virginia, traveling north on Route No. 626. He said he had probably driven over the road before; but was not familiar with its intersection with Route No. 628. He stopped to ask two colored men, Fred Smith and Willie Cowell, the route to Great Bridge; and as they were going in that direction, he took them in as passengers in his automobile, a 1950 Ford sedan. Smith sat on the right-hand side of the front seat and Cowell in the rear. As Moore was driving along, a heavy farm tractor towing a 4-wheel farm trailer, operated by a 16-year old youth named Musselwhite, was headed west on Route No. 628, approaching the intersection. The tractor entered the intersection and had begun to make a left turn in a southerly direction, when it was struck on its left side by the Ford automobile.

George D. McCoy, a Norfolk County Police Officer, arrived at the scene about 5:45 p. m. He found the automobile sitting at an angle on Route No. 626, 12 feet from the south line of Route 628 extended, or 6 feet from its rounded entrance into Route 626, its right front wheel 6 feet from the eastern edge of the hard surface and its right rear wheel 2 feet distant therefrom. Twelve or fifteen feet from the front of the automobile the tractor was lying on its side, the top of its hood on the hard surface in the center of the intersection, its front turned slightly to the south. Its front end, that is, "the radiator part," was on the edge of the hard surface and dirt on the west side of Route No. 626, and its trailer completely in Route No. 628 facing the west. Skid marks on the right-hand side of the Ford were 22 paces long, and on the left side 12 paces long, indicating that its right rear wheel had first taken hold, but the car had skidded 66 feet. The left front fender, headlight and radiator of the automobile were totally wrecked, the right front fender in a slightly lesser degree. The tractor, weighing about 5,000 pounds, was a vehicle having two small "tricycle-type wheels" close together in the front, and two very large wheels in the rear. The tractor was struck in the center of its left side, and there was apparently an indentation on the right fender of the automobile, near the door, made by the

left rear tire of the tractor. There was no damage to the front of the tractor. McCoy and another witness, Whitfield, found glass, mud and debris from the automobile in the center of the intersection. There is no conflict whatever as to this physical fact.

Officer McCoy, when asked how far could the road marker, on the west side of 626, indicating an intersecting road, be seen by anyone coming from the direction Moore came from, replied: "I would say 250 yards." He also said that standing 200 paces south of the intersection, one could see Route No. 628 "rounding," that is, curving slightly, into the intersection.

Fred Smith, the passenger in the right front seat of the Ford, when asked on what side of the road Moore was driving just before the tractor came out of Route No. 628, said: "He was driving mostly—it seems it's a narrow road through there—and he was driving mostly in the center of the road because it's narrow road mostly," at about 35 miles per hour.

Smith said he first observed the tractor when it drove into the intersection, and described its movements as follows:

"Well, he came out—he kind'a cut his wheels a little bit but not too much to turn; he cut it some." When asked which way the wheels were cut, he replied: "To your left, but he wasn't making too much of a short turn."

Cowell, the passenger in the rear seat of the Ford, said that the tractor came "straight across the road and had just started to turn" when the collision occurred. Said he: "When I seen the wheels, when he got almost half-way across over there it looked to me he was fixing to turn to the left, he cut his wheels, and by that time that is when the car had hit him just about that time." When asked again, if the tractor was coming straight across the road when he saw it, he answered: "Yes, sir." Said he further: "And the tractor went straight, almost straight across and turned its wheels a little before it got over in the ditch on the other side." At that time, Moore's car was about 65 feet from the tractor, Moore put on his brakes, and his car slid into the tractor. Cowell further said that: "The tractor didn't turn sharply, no. He had a wagon on back of it and he was going clear across to cut his wheels so that the wagon would make the turn."

Arthur Nichols, who lives on the east side of Route No. 626 about 900 feet south of the intersection, testified that he was familiar with the intersection, and that "most of the time" it was difficult to see a car coming from Route No. 628 entering Route No. 626 when a crop was

growing in the southeastern corner, and sometimes it would also "be bad to see" the State road marker, because the right of way was not always kept clear. In conclusion, said he: "I couldn't definitely say that you could see the road," that is, Route No. 628. He did not specifically express an opinion as to the conditions existing on the day of the accident.

Moore testified that immediately prior to the collision, he was driving between 40 and 45 miles an hour. It was in evidence that the tractor was traveling not in excess of 15 miles per hour; that its operator was standing up and looking to his right as he entered the intersection; and did not appear to look to the left.

Moore said he saw the head of Musselwhite over the top of the corn crop when the tractor was approximately 30 feet distant from Route 626; that he immediately applied his brakes; his car skidded straight ahead; the tractor entered the intersection; his car hit the tractor; the tractor overturned; and his car stopped. When asked when he first saw the tractor as distinguished from the boy's head, Moore replied: "After it was entering the road that I was traveling on. The boy was standing up." Describing the movements of the tractor, Moore said: "It was coming at an angle turned towards me, that is, to its left." He estimated the angle at "approximately 30 degrees." He then added: "Well, see, as he was coming out from my right I had applied my brakes, and my wheels were sliding. The front of my car was down naturally. When you apply brakes to an automobile the front has a tendency to go down, and he came out and was turning to his left and we collided just as he came out into the road. His left wheel would have been out on the pavement at the edge of the pavement at the point of collision," and his front wheels "approximately in the center of the road." He said the Ford car was traveling straight ahead; that the front of his car hit the tractor near the middle of its left side; and the tractor turned over. He did not recall any forward direction of the tractor after the collision, and was not certain whether his car went forward or backward.

Photographic exhibits plainly show the highway marker indicating the existence of the intersection of Route 628 with Route 626, as well as the slight curve of the entrance of Route 628 into Route 626, over the 2½ feet shoulder of Route 626. Diagrams introduced by each of the parties place the tractor, after the collision, on the west side of Route 626. There was no indication on the road surface or otherwise that it had been shoved backward or moved forward.

Moore contends that there was credible evidence that the collision occurred on Route 626 before his car entered its intersection with

Route 628, and that it was for the jury to say "whether the evidence was governed by rules applying to intersection collisions." He relies on testimony that his automobile was found, after the collision, 12 feet distant from the intersection, and his statement that the tractor was cutting the corner and coming towards him at an angle of 30 degrees when the collision occurred.

This contention is conclusively answered by the undisputed evidence, oral and physical, that the collision did occur within the intersection. It is contrary to the physical facts that the glass and other debris from Moore's car were in the center of the intersection. The witnesses who placed his automobile outside of the intersection did not see it until after the collision had occurred. It is further in conflict with his own evidence that the collision occurred "just as he (the driver of the tractor) came out into the road," and the fact that the tractor was hit in the middle of its left side. It is not in evidence, nor is it claimed, that the much heavier tractor was shoved backwards by the lighter Ford. The Ford must have been more than 66 feet, the distance it skidded after its brakes were applied, from the intersection when Moore first saw the tractor entering the intersection.

The case can rise no higher than Moore's own testimony. His testimony shows that the tractor was on his right, proceeding at a slow rate of speed; that it entered the intersection before he reached it; and that the collision was caused by the failure of his automobile to stop before reaching the intersection.

■ The "T" formed by the junction of Routes 626 and 628 was an intersection within the meaning of Code, 1950, § 46.1-1 (11). *Brown v. Arthur*, 202 Va. 624, 628, 119 S. E. 2d 315. The tractor would have been struck, under the circumstances related, no matter what its rate of speed. The duty was upon Moore to yield the right of way to the tractor. Code, 1950, § 46.1-221*.

There is "but one right of way, and that is with the vehicle on the right, unless such right of way has been forfeited under the provisions of the statute." *Independent Cab Assn. v. Barksdale*, 177 Va. 587, 591, 15 S. E. 2d 112; *Pannell v. Fauber*, 201 Va. 380, 384, 111 S. E. 2d 445.

Even if it be assumed that the driver of the tractor forfeited his right of way because of negligence in failing to keep a proper lookout, or

---

* § 46.1-221 provides, in part, that "when two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the driver on the right, unless a 'Yield Right of Way Sign' is posted."

otherwise, the forfeiture did not transfer the right of way to Moore. Each highway was of the same class or dignity. Each driver had the same difficulty in observing the other approaching the intersection. Each was under the duty of exercising ordinary and reasonable care to avoid a collision. Moore was charged with the duty of yielding the right of way, under the circumstances, to the tractor. If the driver of the tractor was negligent in entering the intersection at 15 miles an hour, certainly the approach of Moore's car at 40 to 45 miles per hour was no less negligent. We may imply negligence on the part of the driver of the tractor; but such negligence does not entitle Moore to recover if he was guilty of contributory negligence.

Contributory negligence on the part of a person injured always implies negligence on the part of the person causing the injury. *Smith v. Carpenter*, 198 Va. 91, 93, 92 S. E. 2d 275; *Nehi Bottling Company v. Lambert*, 196 Va. 949, 955, 86 S. E. 2d 156.

The evidence showed that the front of the tractor was undamaged; that it was struck in the middle; and found overturned in the center of Route No. 628. The evidence of Smith and Cowell that the tractor came straight out of Route 628, and only began to make a left turn after it passed the center of the intersection and had nearly reached the ditch on the west side of Route No. 626; that it was struck on its side; and that the trailer was still completely within Route No. 628, demonstrates clearly that the tractor was not traveling on Route No. 628 at a thirty-degree angle toward Moore. It it had been, it would have been struck in its front, and a part of its trailer would have been on Route No. 626.

Moore also contends that the junction of the roads did not constitute a normal intersection, and that he was only under the duty of exercising reasonable care in approaching it, and that what constituted ordinary and reasonable care was a jury question. He overlooks the evidence that the intersection was visible on the day of the accident to a person exercising ordinary and reasonable care from a distance of 250 yards from the south; and that a person exercising reasonable care could have seen the State highway marker indicating the intersection from a distance of 200 yards south of the intersection. The fact that it might have been difficult on other days, under other circumstances, to observe the marker, or the intersection, did not relieve Moore on the day of the collision of the duty to observe them.

Moore cites and relies upon *Sexauer v. Dunlap*, 207 Iowa 1018, 222 N. W. 420. The facts in that case are different from those here. There

no highway marker was in evidence showing the existence of an intersecting road. The court observed that the intersecting road was an obscured and hidden highway, manifestly a road of less dignity than the road traveled by the tractor in this case. In that case, said the court, a driver, exercising a proper and reasonable lookout, might not have ascertained the existence of the intersecting road. Moreover, the injured driver was only 10 feet distant from the intersecting highway when he first saw the other car entering the intersection.

It is now firmly settled in Virginia that when the evidence introduced by the plaintiff on the trial of his action is clearly insufficient to sustain a verdict in his favor, should such verdict be rendered, it is error for the court to overrule a defendant's motion to exclude such evidence from the jury; or if it plainly appears that the trial court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it, the motion should be sustained. When an issue of fact is one about which reasonable persons cannot differ and the question so plain in the meaning and interpretation that should be given to it, that no doubt is admitted of its legal significance and effect, then it becomes a question of law for the courts to determine. *Dudley* v. *Guthrie*, 192 Va. 1, 3, 63 S. E. 2d 737; *Gray* v. *Van Zaig*, 185 Va. 7, 37 S. E. 2d 751; Burks Pleading and Practice, 4th Edition, § 284, page 506 *et seq.*; 7 Michie's Jurisprudence, Evidence, § 291, page 686 *et seq.*

■ We find no merit in the contention that the court erred in admitting in evidence defendants' Exhibit No. 1, a pencil sketch made by Officer McCoy, showing the intersection and the location of the vehicles after the accident. It is a diagram based upon information of the facts gathered by McCoy immediately after the collision. It was not offered by defendants until after plaintiff's Exhibit No 1, made by the same officer, had been introduced in evidence. The two exhibits are consistent with each other in most respects. However, defendants' exhibit was admissible for the purpose of attacking or impeaching the officer's prior exhibit, insofar as there was any conflict between the two exhibits, and to allow him to explain the physical facts which he saw when he arrived at the scene of the collision. While plaintiff's exhibit No. 1 was identical to the one filed with his official report to the State Division of Motor Vehicles, it was not such a report as constituted a violation of Code, § 46.1-409.

That the plaintiff, Moore, failed to obey his duty to yield the right of way to the tractor on his right, which had entered the intersection

before he arrived there, and that he failed to exercise ordinary and reasonable care, are shown by his own testimony and the evidence introduced in his behalf. It plainly appears that the trial court would have been compelled to set aside any verdict found for the plaintiff. No error was committed in sustaining the motion to strike and in entering judgment for the defendants.

The trial judge is charged with the duty, and given the power, to exercise his sound discretion in submitting issues to a jury and in supervising verdicts. He should be more than a mere referee between litigants. We will not hesitate to approve his action when no abuse of discretion has been shown. Cf. *Smithey* v. *Sinclair Refining Company, et al.*, this day decided, 203 Va. 142, 122 S. E. 2d 872. Moreover, we have consistently reversed judgments when the trial judge has refused to strike the plaintiff's evidence at the conclusion of plaintiff's evidence, when such evidence was clearly insufficient to sustain a verdict in plaintiff's favor. *Pettibone Wood Manufacturing Company* v. *Pioneer Construction Company, Inc., et al.*, this day decided, 203 Va. 152, 122 S. E. 2d 885.

The judgment is affirmed.

*Affirmed.*