Ruth C. KRIZAK and John M. Krizak,
Appellants,

v.

W. C. BROOKS & SONS, INCORPO-
RATED, Appellee.

No. 8915.

United States Court of Appeals
Fourth Circuit.

Argued March 28, 1963.

Decided June 29, 1963.

Emanuel Emroch and Frank N. Cowan, Richmond, Va., for appellants.

A. Scott Anderson, Richmond, Va. (Frank B. Miller, III, Richmond, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, J. SPENCER BELL, Circuit Judge, and PREYER, District Judge.

J. SPENCER BELL, Circuit Judge.

The plaintiffs, Ruth and John Krizak, sued the defendant, Brooks and Sons, Inc., for injuries which they sustained in an accident when the automobile in which they were riding as passengers collided with the defendant's tractor-trailer driven by its employee, Sydnor. The two cases were tried together and the jury returned general verdicts for the defendant. The plaintiffs raise four questions on this appeal, two involving the court's charge to the jury, and two involving evidentiary matters. For the

reasons stated below, we reverse and remand for new trials.

The plaintiffs, husband and wife, were returning to their home in Harrisburg, Pennsylvania, from a trip to Florida with their friends, the Keisers. The collision occurred on U. S. Route 301 in the State of Virginia at about 7:00 o'clock on a snowy morning in February 1961. The party had spent the night at a motel north of Richmond. The host, Mr. Keiser, was driving. Mr. Krizak was sitting on the front seat with him. Mrs. Keiser was directly behind her husband, and Mrs. Krizak was beside her and directly behind Mr. Krizak. The plaintiffs were travelling north and the defendant's truck south; the two lane highway was straight where the collision occurred.

The substance of Mr. Krizak's testimony was that when the defendant's truck was about 300 feet from them it began to move into their northbound lane. He stated that when this occurred, Mr. Keiser took his foot off the accelerator, tried to turn and pass the truck to the left, but as he did so, the truck started back to its right and Keiser quickly turned back to his right just as the collision occurred.

Mrs. Krizak confirmed her husband's testimony that they were travelling in the northbound lane. She said that she did not see the truck until the instant of impact because she had leaned over to adjust some packages at her feet.

Sydnor, the defendant's driver, said that the automobile in which the Krizaks were riding came into his southbound lane immediately before the impact. As he put it, "the automobile just swerved into me, it wasn't no long way." He said he had no time to do anything but cut his wheels to the right and apply his brakes.

A third witness, Waddell, said he was driving his tractor-trailer approximately two trailer lengths behind the automobile when the collision occurred. He testified that when the automobile was about 150 feet from the place of impact it was "riding the center line"; that he saw the defendant's truck about 350 feet beyond the automobile travelling in its (southbound) lane. This witness had given a prior statement that he was approximately three or four city blocks away when the collision occurred. He placed the impact in the southbound lane.

I

On this record, we think that both plaintiffs were justified in complaining of the judge's submission of the issue of contributory negligence to the jury. We have examined the evidence in a light most favorable to the defendant and even so, we find no basis upon which the jury could reasonably find either of these passengers guilty of negligence. With due regard for the discrepancies in the testimony of the four witnesses, the only inference which reasonable men could draw from any of it was that no matter which vehicle got into the wrong lane, it got there so suddenly that nothing which the plaintiffs passengers could have done under the circumstances would have prevented the accident.

There is no evidence in the record which would raise an inference that both plaintiffs were not justified in their confidence in Mr. Keiser's ability as a driver throughout the trip to Florida and back through Virginia. Mr. Krizak, who was sitting on the front seat, testified that Mr. Keiser seemed perfectly aware of the actions of the defendant's driver and was taking defensive measures to protect his car when he, Krizak, observed defendant's truck in the northbound lane. Only the testimony of Waddell could possibly have justified the submission of the question to a jury on the theory that Keiser was driving recklessly, but even accepting this evidence the conduct was not of sufficient duration that we can infer it came to the attention of his passengers. That portion of his testimony which was admitted by the trial court was that for approximately 150 feet before the impact, the Cadillac was astride the center line of the two lane highway. Whether or not this occurred while the driver, Keiser, was taking the defensive action to which Krizak testified,

it was clearly too short an interval to hold his passengers responsible for any failure to warn, nor was it necessarily inconsistent with Krizak's testimony that Keiser was aware of the situation. Virginia law has not made everyone in the car directly responsible for the operation of the car. A passenger's duty to direct does not arise until (1) it becomes plain that his confidence in his driver has been misplaced, or (2) he has reason to believe that his driver is unaware of danger or is not taking precautions against an apparent danger, Gilliland v. Singleton, 204 Va. 115, 129 S.E.2d 641 (1963) ; Mills v. Wells, 204 Va. 173, 129 S.E.2d 705 (1963), and in either case there must be sufficient time in which to give effective warning. Diggs v. Lail, 201 Va. 871, 114 S.E.2d 743 (1960). Even if we assume that the passengers were conscious that Keiser was over the center line for a distance of 150 feet before the accident, it would take only a few seconds for the two vehicles approaching each other at 35 to 40 miles per hour to close the distance. Krizak's remarks to the driver indicated that he felt the driver was aware of the situation and nothing he could have said would have been effective in this situation.

■ What has been said with respect to Mr. Krizak's case applies even more strongly to Mrs. Krizak's. Certainly, as a passenger riding on the back seat she was not required by law to keep her eyes glued to the highway in front. Her momentary attention to the packages at her feet was not evidence of negligence. Her case is equally as strong as that of the plaintiff in Diggs v. Lail, supra, in which the Virginia Supreme Court of Appeals stated that the trial court would have been justified in refusing to submit the issue of contributory negligence to a jury.

■ While each case presents its peculiar factual situation, the Virginia Courts have consistently held that the passenger *as passenger* must be guilty of negligence and there must be evidence adduced to support that fact before the issue may be submitted to the jury. Virginia Railway and Power Co. v. Gorsuch, 120 Va. 655, 91 S.E. 632 (1917). This case is factually distinguishable from Montgomery v. Whitfield, 188 F.2d 757 (4 Cir. 1951). There the passenger and her husband were driving around midnight when they approached the scene of a wreck where there was plainly visible a police car with blinking red light and an officer in the road waving his flashlight. The passenger looked over her shoulder and saw a vehicle they had just passed rapidly approaching them from the rear and said nothing as her husband pulled into the line of the oncoming car.

We find guidance too in Justice Spratley's opinion in Steele v. Crocker, 191 Va. 873, 62 S.E.2d 850 (1951). There a passenger sued her driver for injuries growing out of a collision. Traveling on a snow covered and slippery three lane highway, the driver overtook and passed three snowplows successively which were being operated in tandem. The first was partly in the driver's right lane and partly on the shoulder, the second covered the remainder of the surface of the right-hand and part of the center lane. The third snow plow, in advance of the others, covered the center lane and was approaching the crest of the hill. After the driver passed the third plow by moving into the extreme left-hand lane he met an oncoming vehicle. Attempting to pull suddenly to his right, he skidded. There, the issue of contributory negligence was submitted to the jury, but speaking of the passenger's duty the court said:

> "Driving at 30 miles an hour and suddenly making a turn to the left gave his passenger little time to remonstrate. After he got into the lane it was too late to protest. Remonstrance might have resulted in more harm than good by creating hesitation or indecision as to his course. It is one thing to warn a driver of a danger unknown to him, and quite another to give directions when the danger is already imminent. One may prevent an accident, the other may tend to create an additional hazard."

Applying this doctrine to the present case, we find no evidence from which a jury could conclude that these passengers had any grounds to believe their confidence in Mr. Keiser as a driver was misplaced or that he was unaware of an existing danger, at least not until it was much too late to make an effective protest. Since the case was submitted on more than one issue and jury's verdict was a general one, the submission of this issue to the jury would require us to remand for a new trial. Wilmington Star Mining Co. v. Fulton, 205 U.S. 60, 27 S.Ct. 412, 51 L.Ed. 708 (1907); Schultz v. Tecumseh Products, 310 F.2d 426 (6 Cir. 1962); Atlantic Coast Line R. Co. v. Tiller, 142 F.2d 718 (4 Cir. 1944), reversed on other grounds, 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465 (1945).

## II

Plaintiffs complain of the trial court's refusal to charge the jury of the defendant's driver's duty to maintain a proper lookout, to keep his vehicle under proper control, to operate it at a reasonable speed under all of the circumstances, and in a manner so as not to endanger the life or property of any person. The court did not deny the existence of such duties, but refused the requested charge on the ground that there was no evidence with which it could be supported. At least as to some portions of the requested charge we would disagree with the judge's reason, since the plaintiffs' evidence tended to indicate that the defendant's truck was being driven in the wrong lane. Thus a reasonable jury could infer failure to maintain a proper lookout, to keep the vehicle under proper control, or to operate the vehicle in a manner so as not to endanger the life or property of any person. Spence v. Miller, 197 Va. 477, 90 S.E.2d 131 (1955); Burton v. Oldfield, 195 Va. 544, 79 S.E.2d 660 (1954); Wor-

cester v. McClurkin, 174 Va. 221, 5 S.E. 2d 509 (1939); Whipple v. Booth, 155 Va. 413, 154 S.E. 545 (1930); Code of Virginia (1950) §§ 46.1–189 and 190(a). However, we find no reversible error, since other parts of the court's charge covered the possible negligence of the defendant for failure to remain in the proper lane. Fed.R.Civ.P. 61.

Plaintiffs also argue that if the jury had believed the defendant's version of the accident, i. e., that plaintiff's vehicle swerved into the wrong lane, then the jury could have found a violation by the defendant's driver of some or all of the duties mentioned in the requested charge. We would agree with the trial court that there was insufficient evidence to support the charge on this theory. Cf. Worcester v. McClurkin, supra. The testimony of the Krizaks, of the defendant's truck driver, Sydnor, and of the witness, Waddell, all indicate that the juxtaposition of the two vehicles on a collision course occurred so rapidly that the defendant had, at best, a few seconds to react, and within that time the defendant's truck did swerve in an attempt to avoid the accident. Even if the jury had believed this version of the events leading to the accident, they would have had no evidence upon which to find a violation of the duties expressed in the rejected charge.

## III

Plaintiffs assert that the trial court committed error in refusing to permit the admission of certain expert testimony. As the trial court indicated, this question is governed by Fed.R.Civ. P. 43(a)[1] rather than by state law. Plaintiffs called Ralph H. Snyder to testify as an expert "accidentologist". Having arrived at his conclusions through an observation of photographs of the vehicles and of the scene of the

---

1. Fed.R.Civ.P. 43(a) provides:
   "All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the Courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States Court is held. In any case, the statute or rule which favors the reception of the evidence governs * * *. The competency of a witness to testify shall be determined in like manner."

accident, and through an observation of the defendant's truck shortly before trial, Mr. Snyder offered to testify as to 1) the point on each vehicle at which it was initially struck by the other vehicle, 2) the angle of each vehicle to the other at the instant of impact, 3) the amount to which the front of each vehicle overlapped the other at the instant of impact, 4) gouge marks and debris on the road to indicate that they do not necessarily lie at the point of impact, and 5) certain evidence concerning the direction of the automobile's steering wheel at the time of impact. The court permitted the expert to testify as to the steering wheel, but refused to allow the admission of the rest of the offered testimony. The refusal was based on the court's determination that the facts appeared to be obvious to a layman, and that, therefore, expert testimony was unnecessary. As to some of the proffered testimony the court gave additional reasons for his refusal. Although the trial court might well have permitted greater latitude, Salem v. United States Lines Co., 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962) (Dictum); Dufrene v. Indemnity Insurance Co., 303 F.2d 788 (5 Cir. 1962), Cert. denied, 371 U.S. 868, 83 S. Ct. 131, 9 L.Ed.2d 105 (1962); Lofton v. Agee, 303 F.2d 287 (8 Cir. 1962); Campbell v. Clark, 283 F.2d 766 (10 Cir. 1960); Carlson v. Chisholm-Moore Hoist Corp., 281 F.2d 766 (2 Cir. 1960), Cert. denied, 364 U.S. 883, 81 S.Ct. 172, 5 L. Ed.2d 104 (1960), we find that he did not abuse his discretion in refusing to admit the testimony. The qualifications of experts and the extent to which they may be permitted to testify is largely left to the discretion of the trial court. Salem v. United States Lines Co., supra; Inland & Sea-Board Coasting Co. v. Tolson, 139 U.S. 551, 11 S.Ct. 653, 35 L.Ed. 270 (1891); Swift v. Southern Rwy. Co., 307 F.2d 315 (4 Cir. 1962); Barnes v. Smith, 305 F.2d 226 (10 Cir. 1962); Cohen v. Western Hotels, Inc., 276 F.2d 26 (9 Cir. 1960); Ackelson v. Brown, 264 F.2d 543 (8 Cir. 1959). Whether, in any given

case, the expert testimony is necessary to aid the jury in its search for the truth depends upon such a variety of factors readily apparent only to the trial judge that we must depend heavily upon his judgment.

IV

In compliance with Virginia law, Code of Virginia (1950) Sec. 46.1–400, the driver of defendant's truck submitted a report of the accident to the Virginia Division of Motor Vehicles. Virginia law provides that this report may not be used in evidence in any trial arising out of the accident. Code of Virginia (1950) Sec. 46.1–408. Nevertheless, plaintiffs sought to cross-examine the driver about the content of this report, and, testifying in the absence of the jury, the driver admitted making statements therein contradictory to his present testimony. Plaintiff's attorney conceded that it would not be permissible for him to disclose that the statement was made in an accident report. He further concedes that if the driver had denied having made the statement contained in the report, he would not be allowed to have the report itself admitted in evidence. Plaintiffs assert error in the trial court's refusal to permit them thus to cross-examine the driver about the substance of the report before the jury.

Obviously, the report is admissible within the literal terms of Fed.R. Civ.P. 43(a) [2]. Clearly, were no privilege involved, a federal equity court would have allowed its admission, Community Counselling Service, Inc., v. Reilly, 317 F.2d 239 (4 Cir. 1963), and federal courts, acting under Rule 43(a), do not always follow state established evidentiary rules of exclusion, e. g., Hope y. Hearst Consolidated Publications, Inc., 294 F.2d 681 (2 Cir. 1961), Cert. denied, 368 U.S. 956, 82 S.Ct. 399, 7 L.Ed.2d 388 (1962); Lawrence v. Nutter, 203 F.2d 540 (4 Cir. 1953). There is, however, respectable authority for the position that federal equity courts followed state statutes on privileges of witnesses. 5

2. See Footnote 1, supra.

Moore, Federal Practice (2d Ed.) Sec. 43.07. During the era before the Federal Rules of Civil Procedure were promulgated, when federal courts followed state procedural and statutory substantive law, this might have been the required result. Connecticut Mut. Life Ins. Co. v. Union Trust Co., 112 U.S. 250, 5 S.Ct. 119, 28 L.Ed. 708 (1884), but see Green, The Admissibility of Evidence under the Federal Rules, 55 Harv.L.Rev. 197, 208 n. 45 (1941). Also, a serious problem of interference with state policy might arise if the federal government were to completely ignore state created confidential relationships. For example, the necessity of obtaining reasonably accurate statistical data concerning motor vehicle accidents may well justify the federal courts in respecting the policy of privilege granted by state laws to accident reports. Relying more on the latter reasoning than on the former, probably the majority of federal courts have applied state statutorily created privileges, at least in diversity cases [3]. That, were this field more appropriate for its concern, federal public policy might require a similar rule is evidenced by such statutory provisions as 45 U.S.C.A. §§ 33 and 41, and 49 U.S.C.A. § 320(f), concerning traffic subject to the jurisdiction of the Interstate Commerce Commission. There, too, a privilege against evidentiary use of an accident report has been granted [4].

We would, therefore, agree with the trial court that Virginia's privilege against the use of these reports in evidence applies in a federal court. Having decided that we would apply state rules of privilege, and, therefore, the state law excluding this accident report, a two-pronged problem of interpretation arises. First, we must decide whether the state court would exclude this evidence; if it would, we must then attack the second problem of deciding whether we should apply the state privileges generally but at the same time interpret these privileges in light of the federal policy favoring admissibility.

As indicated, the state statutes although providing a copy of the report to all persons involved in the accident and their attorneys, provide that the report may not be used in evidence in any trial arising out of the accident. The real issue before us is whether the statements made in the report, rather than the report itself, may be used as evidence. In the instant case, the statements are to be used as impeaching evidence. Were the witness a party, or the equivalent of one, the use of the statements made in the report here attempted would be, as positive evidence in the case, admissible by the opposing party for any purpose [5].

3. Massachusett Mutual Life Insurance Co. v. Brei, 311 F.2d 463 (2 Cir. 1962); Baird v. Koerner, 279 F.2d 623 (9 Cir. 1960); State Mutual Life Insurance Co. v. Wittenberg, 239 F.2d 87 (8 Cir. 1957); Palmer v. Fisher, 228 F.2d 603 (7 Cir. 1955), Cert. denied sub nom. Fisher v. Pierce, 351 U.S. 965, 76 S.Ct. 1030, 100 L.Ed. 1485 (1956); Mariner v. Great Lakes Dredge & Dock Co., 202 F.Supp. 430 (N.D.Ohio 1962); Berdon v. McDuff, 15 F.R.D. 29 (E.D.Mich.1953); Ex parte Sparrow, 14 F.R.D. 351 (N.D.Ala.1953); Anderson v. Benson, 117 F.Supp. 765 (D. Neb.1953), Appeal dismissed, 215 F.2d 752 (8 Cir. 1954); Holbert v. Chase, 12 F.R.D. 171 (E.D.S.C.1952); Stiles v. Clifton Springs Sanitarium Co., 74 F. Supp. 907 (W.D.N.Y.1947), see 2B, Barron & Holtzoff, Federal Practice and Procedure (Rules Edition 1961) § 967.

Monarch Insurance Co. of Ohio v. Spach, 281 F.2d 401 (5 Cir. 1960), cited by the parties, is not contrary. The statute there involved is not so much a rule of privilege as it is one controlling discovery, and the court there found that federal discovery rules would appropriately satisfy the policy expressed in the Florida statute.

4. Compare Goosman v. Pyle, 320 F.2d 45 (4 Cir. 1963) (No. 8762).

5. As the plaintiffs have not so attempted to use the report, we need not here decide whether a statement of the driver would be usable as a party admission. Compare Johnson v. Empire Machinery Corp., 256 F.2d 479 (5 Cir. 1958), with Grayson v. Williams, 256 F.2d 61 (10 Cir. 1958), and Cf. Raybourne v. Gulf Atlantic Towing Corp., 276 F.2d 90 (4

Community Counselling Service, Inc. v. Reilly, 317 F.2d 239 (4 Cir. 1963); Wigmore on Evidence (3rd Edition 1940) § 1048, et seq.

That the Virginia courts have given the words of the statute excluding these reports their normal meaning is evidenced by Willis v. Commonwealth, 190 Va. 294, 56 S.E.2d 222 (1949), in which such reports prepared by a police officer were held inadmissible. The Virginia court has not, however, permitted the statutory exclusion to protect statements or diagrams not a part of the report, even though they are the exact duplicates of those submitted in the report. Thus in Moore v. Warren, 203 Va. 117, 122 S.E. 2d 879 (1961), the Virginia Supreme Court permitted the admission of a police officer's diagram of the scene of an accident, even though a copy of the same diagram had been made a part of the officer's accident report. A similar distinction has been made with regard to a Virginia statute, Code of Virginia (1950) § 8–293, which prohibits the introduction in evidence of a statement of a witness to an accident involving personal injury unless it is a deposition taken on notice. In Harris v. Harrington, 180 Va. 210, 22 S.E.2d 13 (1942), the witness made oral statements to a party's attorney, the attorney committed the substance of the statement to writing, and the witness then signed the writing. The court held that although the writing was not admissible, the oral statements were, and could be used for impeachment of the witness. It would appear that these holdings are based on the same theory that admits the testimony of an eavesdropper to a confidential communication, 8 Wigmore on Evidence, (McNaughton Rev.1961) §§ 2326, 2339, or a copy of a census report, St. Regis Paper Co. v. United States, 369 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961), or a tax return, St. Regis Paper Co. v. United States, supra at 219, 82 S.Ct. at 296 (Dictum); United States v. O'Mara, 122 F.Supp. 399 (D.D.C.1954),

retained in the citizen's file. Cf. Atlantic Coast Line R. Co. v. Tiller, 142 F.2d 718 (4 Cir. 1944), Reversed on other grounds, 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465 (1945). These cases are, of course, not clear authority for the use of the statements here involved in the manner suggested. It has not been held that, for example, an attorney may testify as to the contents of a confidential letter to him, as long as the letter itself is not admitted. And, conversely, neither has it been held that an individual may be required to testify as to the substance of privileged statements made in filed copies of tax return or census reports, or made to his attorney.

There is, however one factor which serves to distinguish the above cases from the instant one. The statements made in the accident report are not confidential in every sense. The statute provides that a copy is to be furnished to other persons involved in the accident and their attorneys. This tends to indicate that the purpose of the statute is to permit the report to be used against the maker, and merely prohibits the admission of the report itself, carrying with it the stamp of an official document and the strong psychological effect of a written statement. That this is a permissible interpretation of the statute is shown by the reasoning of the Virginia court in Moore v. Warren, 203 Va. 117, 122 S.E.2d 879 (1961). There, the court seemed to distinguish between the admissibility of the statement made in the report, and the report itself. Thus, as the reason for excluding the report, the court cited the statute, but as to the reason for excluding the statements made therein, the court relied on the hearsay rule. And in Harris v. Harrington, 180 Va. 210, 22 S.E.2d 13 (1942), discussing Code of Virginia (1950) § 8–293, the court stressed the strongly probative value of the written statement as the basis for distinguishing between it and the oral statements upon which it was based.

Cir. 1960); Darter v. Greenville Community Hotel Corp., 194 F.Supp. 642

(W.D.S.C.1961), Affirmed, 301 F.2d 70 (4 Cir. 1962).

Faced as we are with some doubt as to the meaning of the statute, we decide for admissibility. Cf. Mourikas v. Vardianos, 169 F.2d 53, 59 (4 Cir. 1948). Generally, exclusionary rules of this type should be closely construed as stumbling blocks in the jury's search for truth. However, rather than establish a broad rule, we here only decide that the statements made in the report may be used in the manner suggested for purposes of cross-examination. And, in order to fully carry out the purposes of the privilege, no mention of the existence of the report as such may be made.

For the errors herein noted the cases are remanded for trial in accordance with this opinion.

Remanded.