# Richmond

EDWARD W. RUSHTON, JR. v. JAMES C. MOUNTCASTLE.

March 6, 1961.

Record No. 5181.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*C. E. Hunter* and *Charles D. Fox, III* (*Hunter, Fox & Fox,* on brief), for the plaintiff in error.

*George E. Allen* and *Edwin M. Young,* for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

This action arises out of a collision between a motorcycle operated by James C. Mountcastle, hereinafter called the plaintiff, and an automobile driven by Edward W. Rushton, Jr., hereinafter called the defendant, in which the plaintiff was seriously and permanently injured. In an action at law for damages for his injuries the plaintiff has recovered a verdict and judgment of $25,000. The defendant has appealed, claiming that the verdict and judgment are unsupported by the evidence in that there was no showing that he was guilty of negligence which was a proximate cause of the collision, that the plaintiff was guilty of contributory negligence, and that the lower court erred in its rulings on the instructions.

The undisputed evidence is that the collision occurred at the intersection of Brandon road and Wakefield avenue in the city of Roanoke. Brandon road runs approximately east and west, with the center line marked on the pavement. Wakefield avenue runs approximately north and south. The collision occurred at dusk, about 7:00 p. m., on April 6, 1958, when the pavement was dry. Just before the collision both vehicles were proceeding eastwardly along Brandon road. After laying down skid marks of some 30 feet, the Mountcastle motorcycle struck the right rear of the Rushton car.

As is usual in cases of this character, the evidence as to the movements of the two vehicles just prior to the collision and what brought

it about, is highly conflicting. The plaintiff testified that he approached the intersection at the permitted speed of 25 miles per hour. It was, he said, his intention to go through the intersection. There was a line of traffic moving eastwardly along Brandon road and he rode "close to the white line attempting to go straight down Brandon, straight through." In doing so, he passed to the left of some of the cars which were proceeding in the same direction. As he approached the intersection the defendant, "without any signal * * * suddenly whipped over from the right-hand lane of traffic, in front of me, and applied his brakes." He further said that when the Rushton car made this sudden turn to the left, he (the plaintiff) was about 30 to 40 feet to the rear of it. Then, he said, "I immediately slapped on my brakes and threw my motorcycle to the right to try to avoid the collision." However, he was unable to prevent the collision and the front of the motorcycle struck the right rear of the Rushton car, causing the injuries of which he complains.

The defendant testified that as he proceeded eastwardly along Brandon road he was "preparing to make a left turn" at the intersection and go north on Wakefield avenue. With that purpose in view, he said, he drove "over to my left side of my lane, approximately three feet, four feet, from the double center line," and brought his car to a "gradual stop" about 100 to 125 feet west of the intersection, and waited for a "heavy line" of westbound traffic to clear the intersection before attempting his left turn. After his car had been standing for "somewhere between five and ten seconds" he heard a "screeching noise" behind him and immediately thereafter the motorcycle struck the rear of his car and "knocked" it "forward for a few feet." The defendant further said that before pulling his car to the left-hand side of the lane he gave a signal with his "mechanical blinker," "looked in the rearview mirror and saw no one."

A passenger in the Rushton car testified that at the time of the collision that car was at a complete stop and had been standing from ten to fifteen seconds.

The jury have accepted the plaintiff's version as to how the collision occurred and their verdict has been approved by the lower court. Since that verdict rests upon credible evidence it is binding on us and the plaintiff is entitled to have his case considered in the light most favorable to him. 1 Mich. Jur., Appeal and Error, § 270, pp. 692, 693, and cases there cited.

Viewing the case in the light most favorable to the plaintiff, there

is ample evidence to sustain the finding that the defendant was guilty of negligence which was a proximate cause of the collision. According to the plaintiff's testimony, without any signal, the Rushton car was suddenly turned from its lane of travel into the path of the motorcycle when the latter vehicle was too close to avoid the collision. This conduct on the part of the defendant was in violation of Code, § 46-233, then in effect.[1] The court so told the jury in Instruction No. 1 and left them to decide whether such violation was a proximate cause of the collision. The phraseology of the instruction in that connection will be referred to later. It will be recalled that the defendant testified that he did not see the motorcycle to his rear before undertaking his turn. The jury may have found that in the exercise of ordinary care he should have seen it.

The defendant insists that the plaintiff was guilty of contributory negligence as a matter of law in that he was driving at an excessive rate of speed and not keeping a proper lookout. Under the plaintiff's version of the accident these were matters for the jury. The plaintiff testified that just before the collision he was proceeding at 25 miles per hour which was within the legal speed limit. The fact that the motorcycle skidded for a distance of 30 feet just before the impact does not necessarily show the plaintiff's testimony to be untrue. The testimony of the motorcycle officer, upon which the defendant mainly bases this argument, was that a 30-foot skid mark might or might not indicate a speed in excess of 25 miles per hour, depending upon the manner in which the brakes had been applied.

As to the lack of a proper lookout, the plaintiff's version is that the defendant's car, suddenly and without a signal, cut directly in front of him when the motorcycle was too close to avoid the collision.

The principal contention of the defendant is that the lower court erred in granting Instruction No. 1 at the request of the plaintiff. This instruction reads:

"The court instructs the jury that under the law of Virginia every driver who intends to turn, or partly turn, from a direct line of travel, shall first see such movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal of his intention to make such turn, plainly visible to the driver of such other vehicle, of his intention to make such movement; the court, therefore, tells you that if you be-

---

[1] See 1958 Replacement Volume, § 46.1-216.

lieve from a preponderance of the evidence that the defendant Rushton turned without warning from a direct line of traffic, and without first undertaking to ascertain that such movement could be made in safety, and failed to give such required signal of his intention to make such movement, and that the plaintiff Mountcastle was at the time in the process of lawfully passing the line of traffic in which the defendant was driving, and that as a direct, sole and proximate result thereof, the plaintiff, without fault on his part, was injured, then the court tells you that if you do so believe you should find your verdict for the plaintiff and assess his damages in accordance with the other instructions of the court."

The defendant objected to this instruction on the grounds that: "(1) The testimony does not bear out any intention on the part of the plaintiff to pass defendant's car immediately prior to the accident. The evidence, taken as a whole of the plaintiff, shows that he was merely following the defendant's car, and had prior thereto passed other traffic on Brandon Road; (2) the instruction, being a finding instruction, emphasizes unduly the plaintiff's case and ignores setting forth the theory of the defendant's case."

The first contention of the defendant is that the instruction was misleading in that there was no evidence that just before the collision the plaintiff was "endeavoring to pass defendant's car," and that the language of the instruction permitted the jury to "speculate" on whether he was doing so. But the instruction is not predicated upon a finding that the plaintiff was passing the defendant's car. It is predicated upon a finding that the defendant improperly and without a signal turned from his lane of travel and that this occurred while the plaintiff was "lawfully passing the line of traffic in which the defendant was driving." This is in accord with the plaintiff's testimony.

It is next argued that the instruction, being a finding instruction, was defective in that it failed to set forth the defendant's theory of the case. In separate instructions granted at the request of the defendant, the court clearly and fully instructed the jury upon his theory of the case. In Instruction "B" it told the jury that if the plaintiff was following the defendant's car, it was his duty not to follow it "more closely than was reasonable and prudent" under the circumstances, to operate the motorcycle in a careful and prudent manner, to keep it under reasonable control, and to keep a proper lookout. They were further told that a violation of any or all of

these duties constituted negligence, and that if such negligence proximately caused or contributed to the collision, the plaintiff was not entitled to recover. In Instruction "D" the court defined the duty of the plaintiff in passing the vehicle ahead of him.

While both parties were entitled to have their respective theories submitted to the jury by proper instructions, it was not necessary that these be embraced in the same instruction. *Thomas* v. *Snow*, 162 Va. 654, 662-663, 174 S. E. 837; *Clinchfield Coal Corp.* v. *Compton*, 148 Va. 437, 443, 139 S. E. 308, 55 A. L. R. 1376.

The point is made that the first part of Instruction No. 1, which was based on Code, § 46-233, is fatally defective in that it told the jury that a driver intending to turn from a direct line of travel "shall first see [that] such movement can be made in safety," whereas it should have told them that before making such turn the driver "shall *use reasonable and ordinary care under the circumstances to see* that such movement can be made safely." (Emphasis added.) *Smith* v. *Clark*, 187 Va. 181, 190, 46 S. E. 2d 21, 25. See also, *Oliver* v. *Forsyth*, 190 Va. 710, 715, 58 S. E. 2d 49, 51. While this criticism of the instruction is well taken, no such objection to it was made in the court below and hence will not be considered here. Rule 1:8; *Hickerson* v. *Burner*, 186 Va. 66, 69, 70, 41 S. E. 2d 451, 452; *Newton* v. *City of Richmond*, 198 Va. 869, 871, 96 S. E. 2d 775, 777; Burks Pleading and Practice, 4th Ed., § 433, pp. 852, 853.

On the whole we find no reversible error in the proceedings below and accordingly the judgment is

*Affirmed.*