# Richmond

## CHARLES R. MILLS v. ANNIE C. WELLS.

March 4, 1963.

Record No. 5544.

Present, Spratley, Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*J. Calvitt Clarke, Jr.* (*Sands, Anderson, Marks and Clarke,* on brief), for the plaintiff in error.

*Robert R. Merhige, Jr.* (*Robert P. Beaver; Merhige, Byrne, Montgomery and Baber,* on brief), for the defendant in error.

I'Anson, J., delivered the opinion of the court.

This action was instituted by the plaintiff, Annie C. Wells, against the defendant, Charles R. Mills, to recover damages for personal injuries sustained as a result of the defendant's alleged negligent operation of an automobile. There was a jury trial which resulted in a verdict for the plaintiff in the amount of $4,000. The trial court entered judgment on the verdict, and the defendant is here on a writ of error.

The defendant contends that the court erred (1) in submitting the issue of his negligence to the jury; (2) in failing to submit to the jury the issue of whether the plaintiff was guilty of negligence that was a contributing cause of the collision; (3) in refusing and granting certain instructions; and (4) in its oral instruction to the jury given in response to a juror's question.

The accident happened in the mid-afternoon on May 4, 1959, at the intersection of Rowe and Belvidere streets in the city of Richmond. The weather was clear and the streets were dry. Belvidere street runs generally north and south, has two lanes for northbound traffic, separated by a broken white line, and has two lanes for southbound traffic, separated by a broken white line. The north and south traffic lanes are separated by solid white lines. Belvidere street is U. S. route 1 through Richmond, and is very heavily traveled.

Rowe street runs east and west and enters Belvidere street from the east but does not cross it, thus forming a "T" intersection. It is a narrow street, and there is a yield sign against traffic entering Belvidere street.

At approximately 125 feet north of Rowe street, China street enters Belvidere from the west but does not cross it. Traffic at this intersection is controlled by a traffic light.

The plaintiff, a 69-year-old woman, was a passenger in the right front seat of an automobile driven by Mrs. Lillian Wilburn. The Wilburn car was proceeding west on Rowe street to Belvidere where it stopped in accordance with the yield sign. Mrs. Wilburn testified that when she was bringing her car to a stop at the intersection she saw traffic in both northbound lanes on Belvidere street stop in obedience to the traffic light at the intersection of China and Belvidere streets. Traffic in the outside northbound lane of Belvidere was lined up from the light back to the north side of the Rowe street intersection, and a truck had stopped in this lane of travel at the south side of the intersection. Vehicles were lined up in the lane behind the truck for several blocks but the Rowe street intersection was clear of traffic. She said that since she intended to make a left turn into one of the southbound lanes on Belvidere street where there was no traffic she drove her car from its stopped position into the intersection and across the outside northbound lane of Belvidere street, and while looking to her left and "barely moving" across the inside northbound lane the automobile driven by the defendant crashed into the left side of her car.

The plaintiff testified that when the Wilburn car was approaching Belvidere street she saw the traffic light at the China and Belvidere intersection change to red and traffic on Belvidere stop. Vehicles were backed up in both northbound lanes from the light to the Rowe street intersection. South of the intersection traffic had backed up in the outside northbound lane for some distance. There were no vehicles blocking the Rowe and Belvidere street intersection. Southbound traffic on Belvidere had also stopped at the red light at the China street intersection. Mrs. Wilburn then drove her car across the outside northbound lane of Belvidere and, while looking to her left for traffic, she slowly entered the inside northbound lane, and the automobile driven by the defendant collided with the Wilburn car. As a result of this collision the plaintiff suffered bodily injuries.

The defendant testified that he was proceeding in the inside, or passing, northbound lane on Belvidere street, at a speed estimated from 20 to 25 miles an hour, and was passing a truck traveling in the outside lane which had slowed down just south of the intersection of Rowe street; that the northbound inside lane was clear of traffic

up to the China street traffic light; that there was a line of traffic in the outside northbound lane from the traffic light to the Rowe street intersection and a line of traffic behind the truck. He knew that Rowe street intersected Belvidere street, but his view was blocked by the truck he was passing and he did not see the Wilburn car until it appeared in his lane of travel.

Officer William A. Talbert, of the Richmond Bureau of Police, investigated the accident. He testified that the defendant told him he was traveling north on Belvidere street at a speed of 20 to 25 miles an hour and was passing a truck that had stopped at the Rowe street intersection; that the truck blocked his view of traffic coming out of Rowe street; that he started to slow down and at that moment the Wilburn car appeared in the intersection in his lane of travel and his car collided with it. His investigation showed that the defendant's car skidded 24 feet to the point of impact. The front of the defendant's car and the left side of the Wilburn car were damaged. The posted speed limit on Belvidere street was 25 miles an hour.

The testimony of the plaintiff and her witnesses as to how the accident occurred was accepted by the jury and their verdict was approved by the trial court. The verdict of the jury is binding on us unless it is plainly wrong or without credible evidence to support it, and the plaintiff is entitled to have her case considered in the light most favorable to her. *Allen* v. *Brooks*, 203 Va. 357, 361, 124 S. E. 2d 18, 21; *Rushton* v. *Mountcastle*, 202 Va. 521, 523, 118 S. E. 2d 660, 662; 1 Mich. Jur., Appeal and Error, § 270, pp. 692, 693.

Negligence, contributory negligence, and proximate cause are ordinarily questions for determination by a jury. *Allen* v. *Brooks*, *supra*, 203 Va. at p. 361, 124 S. E. 2d at p. 21; *Standard Oil* v. *Williams*, 202 Va. 362, 366, 117 S. E. 2d 93, 95.

Where reasonable men may differ as to the conclusion of facts to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, a factual question is presented for determination by a jury. But where reasonable men should not differ as to the conclusion to be reached from the facts, it becomes a question of law for the court. *Steele* v. *Crocker*, 191 Va. 873, 880, 62 S. E. 2d 850, 853; *Nehi Bottling Co.* v. *Lambert*, 196 Va. 949, 955, 86 S. E. 2d 156, 159.

The determination of whether or not a certain speed is excessive has to be in a large measure governed by conditions then existing and not necessarily by the posted speed limit. *Carroll* v. *Miller*, 175 Va. 388, 400, 9 S. E. 2d 322, 327; *Richmond Greyhound Lines, Inc.* v.

*Brown,* 203 Va. 950, 954, 128 S. E. 2d 267, 270; 2 Mich. Jur., Automobiles, § 17, p. 457.

In the light of the principles above stated, the negligence of the defendant presented a factual question, and there is ample credible evidence to support the finding of the jury that the defendant was guilty of negligence which was a proximate cause of the collision. The plaintiff's evidence shows that there was heavy traffic on Belvidere street in both northbound lanes of travel at the time the accident occurred. Traffic in both lanes had stopped for the traffic light at the China street intersection and was backed up to the Rowe street intersection. The defendant was familiar with the intersection, and his view of traffic coming out of Rowe street was obstructed by a truck which had stopped in the outside northbound lane on the south side of the intersection. Yet he drove his car up to the intersection, at a speed of from 20 to 25 miles an hour, while traffic was stopped in his lane of travel just across the intersection. Under the conditions then existing the defendant did not keep a proper lookout, he failed to keep his car under proper control, and he was traveling at an excessive speed when he collided with the automobile in which the plaintiff was riding.

Section 46.1-190(e), Code of 1950, 1958 Replacement Volume, relied on by the defendant as allowing vehicles to pass at intersections where the highway has two or more lanes in each direction, is not applicable under the facts of the present case. Nor are the cases relied on by the defendant applicable. They involve accidents on the main highway and a side road wherein the driver on the main highway saw a vehicle stopped on the secondary road and he had a right to assume that his statutory right of way would not be violated until put upon notice to the contrary.

The defendant says that the plaintiff was guilty of negligence that contributed to the collision and the court erred in refusing to submit this issue to the jury.

A guest or passenger in an automobile driven by another is not required to exercise the same degree of vigilance and watchfulness as the driver. However, it is the duty of a passenger to exercise reasonable care for his own safety and he must observe the same degree of care that a reasonable person would exercise under like circumstances. *Transit Company* v. *Simmons,* 198 Va. 122, 128, 92 S. E. 2d 291, 296. See also *Garst* v. *Obenchain,* 196 Va. 664, 672, 85 S. E. 2d 207, 212; *Gilliland* v. *Singleton,* this day decided.

There was nothing to indicate to the plaintiff that Mrs. Wilburn was not operating her automobile in a reasonably careful manner and not keeping a proper lookout. Mrs. Wilburn had stopped her vehicle at the yield sign at Rowe street and she looked before proceeding across the intersection, which was clear of traffic. She was looking to her left as she proceeded slowly across the northbound inside lane of Belvidere street and no warning from the plaintiff could have prevented the collision.

The plaintiff had no reasonable cause to believe that the defendant's automobile would move into the intersection under the traffic conditions then existing. There is no evidence from which it could reasonably be concluded that the plaintiff failed to exercise reasonable care for her own safety. Hence the trial court did not err in refusing to submit to the jury the question of whether the plaintiff was guilty of negligence that contributed to the collision.

The defendant says that it was error for the court to refuse to give instruction B which told the jury, among other things, that it was the duty of the plaintiff's driver to drive her car at a reasonable and proper speed and to apply her brakes when necessary in the exercise of ordinary care. The duties of plaintiff's driver, which were not limited to speed and the application of brakes, were fully and correctly set out in the court's instruction No. 3, and it was not error for the court to refuse to reiterate them in defendant's instruction B.

The defendant concedes that instruction G offered by him, which told the jury that the defendant had a right to assume that plaintiff's driver would observe the yield sign, was not a full and complete statement of the law applicable. Hence it was not error for the court to refuse it as presented.

The defendant argues that the court's instruction No. 1, telling the jury that it was his duty to drive his automobile at a speed not greater than was reasonable and proper, having regard to all the conditions then and there existing, was error because there was no evidence that he was traveling at an excessive speed. The instruction was a proper statement of law under the facts and circumstances of this case. See *Richmond Greyhound Lines, Inc.* v. *Brown, supra.*

Lastly, the defendant says that the court's oral remarks to the jury, after they had retired and later returned to the courtroom, constituted prejudicial error. One of the jurors asked the court to allow them to ask each of the witnesses a question about "this key point that we are trying to determine" from conflicting testimony.

The trial judge denied the request on the grounds that the evidence had been closed and the witnesses, no longer separated, could have discussed the case among themselves, and he told the jury:

"* * * The only thing that I can tell you gentlemen is that if you feel that there was a conflict in the evidence on this particular point, some witness or witnesses testifying one way or the other way, that is one of the things that you ought to try to resolve if you can. Now, if it is just an *impass*, some of you remember it so definitely some way and some so definitely the other way that you couldn't conscientiously render an abiding conviction so as to agree on a verdict, why we will have to discharge you, but, of course, it is your duty to confer among yourselves and try and reconcile any differences as to recollection of the evidence, if you can, but I will leave it entirely up to you gentlemen but at this stage you will just have to try to resolve it yourself if you possibly can * * *."

The defendant contends that by this oral instruction the court told the jury that they had to reconcile their differences on the conflicting evidence and thereby told them that the particular evidence which was the subject of the inquiry was material to the case. He says that the court should have qualified its language by telling the jury that they should try to reconcile their views on this particular aspect of the evidence "if they found it to be material to the issues." Hence he argues that the court invaded the province of the jury.

We do not agree with defendant's argument. The jury were fully instructed on all the issues involved in the court's written instructions and it was their province to determine what was material without any qualifying language from the court. The trial judge did not indicate to the jury that he thought the particular point was material to the case. Indeed, the request of the juror shows that the jury had already decided it was a key point. The matter of resolving the conflicts in the evidence was left entirely to the jury. There was nothing improper in the court's remarks that it was their duty to reach an agreement if they could. They were not told that they should surrender their conscience in order to arrive at a verdict. See *Petcosky* v. *Bowman*, 197 Va. 240, 250-253, 89 S. E. 2d 4, 11-13, 60 A. L. R. 2d 199; 53 Am. Jur., Trial, § 957, p. 675; Annotations: 109 A. L. R. 73, and 19 A. L. R. 2d 1257.

For the reasons stated, the judgment of the trial court is

*Affirmed.*