# Richmond

SAMMY WALLOWER, JR. v. LINDA FALWELL MARTIN, AN INFANT, ETC.

October 11, 1965.

Record No. 6010.

Present, All the Justices.

*William Rosenberger, Jr.,* for the plaintiff in error.

*J. Murrell Daniel (William B. Smith,* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was instituted by plaintiff, Linda Falwell Martin, an infant suing by her next friend, against Sammy Wallower, Jr., and Billy Ray Huffman for personal injuries sustained by the plaintiff while she was a guest passenger in an automobile driven by Wallower, which was in collision with an automobile operated by Huffman. Mrs. Martin charged Wallower with gross negligence, and Huffman with ordinary negligence.

On motion of plaintiff, a committee was appointed for Wallower, a convict in the State Penitentiary at the time of the institution of this proceeding. Code of Virginia, §§ 53-306-307, Repl. Vol. 1958. Responses, denying negligence, were filed by and for each of the defendants. There was a jury verdict on July 18, 1963, for Mrs. Martin against Wallower for $1,500.00, and in favor of Huffman.

Plaintiff moved the court to set aside the verdict as grossly inadequate. Wallower moved to set it aside on the grounds that it was contrary to the law and the evidence and for erroneous instruction of the jury. Upon consideration of the motion of both the plaintiff and defendant, the court, without assigning any specific reason, sustained them as to the finding against Wallower, and awarded a new trial as to him, and overruled the motions with respect to the finding in favor of Huffman, and entered judgment in favor of Huffman.

A new and second trial as to the liability of Wallower was held on September 19, 1963. There was a jury verdict for $22,500.00 in favor of Mrs. Martin against Wallower. Over the objection and exception of Wallower, judgment was entered according to the verdict. Wallower applied for and obtained this writ of error.

There is no material dispute as to the evidence. It was substantially the same in both trials. The main issues are whether the evidence was sufficient to establish that Wallower was guilty of gross negligence, and whether, in the second trial, the jury were properly instructed.

■ The evidence may be summarized as follows:

The plaintiff, Mrs. Martin, and Wallower left Lynchburg, Virginia, where they resided, on the evening of January 19, 1963, and went to Roanoke, Virginia, in an automobile with several friends. They arrived in Roanoke between 9:30 and 10:00 p. m., and went to a tavern where they drank "a couple of beers." Mrs. Martin and Wallower left the tavern about 11:15 p. m. in a 1956 Ford automobile, owned by James Harris, and operated by Wallower, seeking an

eating place. A short time thereafter, the vehicle, driven by Wallower and occupied by Mrs. Martin as his guest, collided with a 1956 Pontiac automobile operated by Billy Rae Huffman. Mrs. Martin sustained serious and permanent injuries.

The accident happened at a point near the center of the intersection of Campbell avenue and Thirteenth street, in the city of Roanoke. It was raining, the streets were wet, and the visibility was poor. There were no stop signs nor traffic lights controlling the intersection. Campbell avenue, 36 feet wide, runs generally east and west, and Thirteenth street, 26 feet wide, runs generally north and south. The streets, at the intersection, are level, and the surface is commonly called "black-top." The speed limit, at that point, is 35 miles per hour. Wallower was headed east on Campbell avenue, and Huffman was headed north on Thirteenth street. Each approached the intersection at approximately the same time. At the southwest corner of the intersection, there is a transit bus garage and lot. The building on the lot is set 59 feet back from Thirteenth street and 67 feet back from Campbell avenue. The surface of the open lot is concrete, and there were no busses parked on it, at the time of the accident.

Huffman estimated that Wallower approached the intersection at a speed of about 50 miles per hour, without slowing down, putting on his brakes, or making any effort to yield the right-of-way to the vehicle on his right. Huffman said he was traveling on Thirteenth street at a speed of 15 to 20 miles per hour, getting ready to turn into Campbell avenue, when Wallower's automobile struck his automobile broadside, near its left front door, in the center of the intersection, and knocked it 25 to 30 feet easterly on Campbell avenue. The collision occurred with such force that it knocked the seat out of the Huffman car, bent its frame against the transmission, and broke every glass in the car. Huffman was thrown clear of his automobile, and was found lying on the northeast corner of the intersection. No skid marks were found at the scene of the accident. The Pontiac automobile weighed 3600 pounds, while the Ford weighed 3100 pounds. Both were total losses.

Mrs. Martin testified that subsequent to the day of the accident, Wallower told her that he thought he was driving 40 or 45 miles per hour, when the collision occurred. Two other eyewitnesses, who were in a car following the Huffman automobile, testified that the Wallower automobile was going "fast," or "pretty fast."

A police officer who interviewed Wallower at the hospital im-

mediately after the accident, said that Wallower, who seemed then to be in a state of shock, stated that he did not know what had happened; that he did not see the other car until he was right on it; and that he did not know his speed, but estimated he was traveling about 25 miles an hour.

Wallower was not seriously injured. Although present at the trial, he did not testify.

The evidence, other than the statement of Wallower to the police officer, indicates that, on a rainy night and on a wet street, Wallower was exceeding the speed limit at the time of the accident; that he failed to keep a lookout which would have disclosed the car of Huffman on his right headed north on Thirteenth street; that he made no effort to stop his car, and failed to yield the right-of-way to Huffman.

It is often a difficult task to determine whether the facts and the reasonable inferences therefrom in a given case do or do not show gross negligence as a matter of law, or present an issue of fact for a jury under proper instructions. In many cases, we have said that: " 'Gross negligence is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another.' Whether or not gross negligence has been proved depends on the facts and circumstances of each case. If the evidence is such that reasonable men should not differ as to the conclusions drawn from what has been proved, the question is one of law for the court; and conversely, if reasonable men may differ, then the question is one of fact for determination by a jury." *Barham* v. *Bank*, 206 Va. 153, 155, 142 S. E. 2d 569, 571; *Rigney* v. *Neauman*, 203 Va. 822, 826, 127 S. E. 2d 403, 406; *Fleming* v. *Bowman*, 203 Va. 876, 879, 128 S. E. 2d 290; *Bond* v. *Joyner*, 205 Va. 292, 296, 136 S. E. 2d 903, 906; *Smith, Ex'r* v. *Smith*, 199 Va. 55, 97 S. E. 2d 907; *Solterer* v. *Kiss*, 193 Va. 695, 703, 70 S. E. 2d 329, 333; *Finney* v. *Finney*, 203 Va. 530, 533, 125 S. E. 2d 191; *Kennedy* v. *McElroy*, 195 Va. 1078, 1082, 81 S. E. 2d 436, 439. See also *Ketchmark* v. *Lindauer, Adm'r*, 198 Va. 42, 48, 92 S. E. 2d 286; *Carroll* v. *Miller*, 175 Va. 388, 9 S. E. 2d 322; and 13 Mich. Jur., Negligence, Section 5, page 511, 1965 Supp. and cases cited.

It is true, as the trial judge here said, that the evidence presents "a close question as to gross negligence, awfully close," but it is still a question that must be resolved from the circumstances surrounding the accident, the testimony, and the reasonable inferences therefrom.

When reasonable men may differ in that resolution, the issue must be left for the determination of a jury under correct instructions.

Upon the trial of the case, the court, over the objection of Wallower, gave instructions 2 and 3, which read as follows:

"No. 2. The Court instructs the jury that the defendant, Sammy Wallower, Jr., in the operation of the automobile, described in the evidence, *owed to the plaintiff, Linda F. Martin, the legal duty to use slight care to perform or comply with each and all of the following duties:*

"1. To drive the automobile so as not to exceed a reasonable speed under the circumstances and conditions then existing, and in no event to exceed a speed of 35 miles per hour;

"2. To keep a proper lookout for other vehicles using the highways so as to avoid colliding with the same;

"3. To yield the right of way to the motor vehicle which the defendant, Bill Rae Huffman, was driving.

"If you believe from a preponderance of the evidence that the defendant failed to exercise such care and such failure amounted to gross negligence and if you further believe from a preponderance of the evidence that such gross negligence, if any, was a proximate contributing cause of the plaintiff's injuries, then you shall find a verdict in favor of the plaintiff." (Emphasis added.)

"No. 3. The Court instructs the jury that where it was the *duty of the defendant, Wallower, to use slight care to keep a proper lookout* for the plaintiff it is his duty not only to keep such a lookout but to take advantage of what it discloses and if he fails to do so he is guilty of gross negligence as if he had failed to keep a lookout. Therefore, *if you believe* from a preponderance of the evidence *that the defendant either failed to exercise slight care to keep such a proper lookout for the other motorist,* Huffman, or *failed to exercise slight care* to take advantage of *what such a lookout would or should have disclosed then he would be grossly negligent.* And if you further believe from a preponderance of the evidence that such failure, if any, was a proximate cause of the collision you should find a verdict for the plaintiff." (Emphasis added.)

In *Barham* v. *Bank, supra,* 206 Va., pages 156, 157, we condemned as "misleading and prejudicially erroneous" an instruction stating that the failure to exercise "slight care" in performance of certain duties was gross negligence.

What was said by Mr. Justice I'Anson in that case applies here.

" 'Slight care' includes also such care as careless or inattentive persons usually exercise, while gross negligence is carelessness manifestly and materially greater than want of common prudence. Defendant's general duty was to exercise reasonable care; but she was liable to her guest passenger only if she was grossly negligent in failing to do so. Gross negligence is 'that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another.' " 206 Va., *supra*, page 157.

In *Finney* v. *Finney, supra*, 203 Va., at page 533, Mr. Justice Buchanan said:

"The failure to be alert and observant and to operate an automobile skillfully and at low speed under all conditions may in some instances amount to lack of ordinary care; 'but such lack of attention and diligence, or mere inadvertence, does not amount to wanton or reckless conduct, or constitute culpable [gross] negligence for which defendant would be responsible to an invited guest.' " (Citing cases.)

A mere failure to use "slight" care in driving at an excessive speed, in not observing a stop sign, or another vehicle, or momentarily driving on the left-hand side of the road, because of mere inadvertence, or temporary inattentiveness, does not necessarily constitute gross negligence. The conduct in question must be measured under the circumstances and conditions existing in which it occurs. Gross negligence is manifestly and materially a greater carelessness than want of common prudence, or the failure to exercise "slight" care.

Instructions 2 and 3 not only failed to clearly define the difference between ordinary and gross negligence, they contained no limitation, qualification, or guide to measure the degree of negligence, except the employment of the adjective "slight." They were in conflict with other instructions given by the trial court defining gross negligence and were, therefore, misleading and confusing. In effect, they directed a verdict for the plaintiff.

We find no merit in the remaining assignments of error. For error in granting Instructions 2 and 3, the judgment complained of is reversed; the verdict is set aside; and the case remanded for a new trial.

*Reversed and remanded.*