## Richmond

THOMPSON W. GOODWIN v. GENE B. GILMAN,
ADM'X, ETC., ET AL.
MARY ELIZABETH REED, AN INFANT, ETC. v.
GENE B. GILMAN, ADM'X, ETC., ET AL.

December 4, 1967.

Record Nos. 6521, 6522.

Present, Eggleston, C.J., and Buchanan, Snead, I'Anson and Gordon, JJ.

*S. J. Thompson, Jr. (Caskie, Frost, Davidson & Hobbs, on brief),* for plaintiff in error in Record No. 6521.

*Arthur E. Smith* for plaintiff in error in Record No. 6522.

*Robert J. Rogers (William B. Poff; Woods, Rogers, Muse, Walker & Thornton, on brief),* for defendants in error in Record Nos. 6521 and 6522.

GORDON, J., delivered the opinion of the court.

John Stewart Gilman, Jr. was killed when a car driven by Thompson W. Goodwin, in which Gilman was riding as a guest-passenger, collided with a car driven by Mary Elizabeth Reed. Gilman's administratrix brought this action to recover for Gilman's death. The trial court entered a $35,000 judgment against Goodwin and Reed, who appeal from that judgment.

The first question raised by Goodwin's appeal is whether the evidence supported the jury's finding that Goodwin was guilty of gross negligence. If so, we reach the other question raised by Goodwin's appeal, whether the trial court erred in its instructions to the jury.

The first question raised by Miss Reed's appeal is whether the evidence supported the jury's finding that Miss Reed was guilty of ordinary negligence. If so, we reach the other questions raised by Miss Reed's appeal, whether the trial court erred in refusing to strike certain hearsay testimony and whether it erred in its instructions to the jury.

Because the plaintiff is armed with a jury verdict in her favor, we must state the facts in the light most favorable to her.

The accident happened on August 28, 1965 at 10:25 a.m. about three miles east of Appomattox on U.S. Route 460, opposite the driveway into Abbitt's store and filling station. At the scene of the accident the highway was 20 feet wide, divided into two traffic lanes with a

solid line next to the westbound lane. The highway was straight, but a hillcrest in front of Abbitt's obstructed a driver's view of oncoming cars, whether he was traveling east or west on the highway.[1]

Before the accident Goodwin was driving west on 460, with his guest-passenger Gilman sitting in the right front seat. Goodwin reduced the speed of his car to about 25 miles an hour and turned to the left, intending to drive into Abbitt's on the south side of the highway.

Miss Reed was driving east on 460 at 55 miles an hour, the maximum legal speed. She had traveled the highway often, knew that Abbitt's was on the other side of the hillcrest she was approaching from the west, and was aware of the "possibility" that cars headed west "would be turning into the store". She acknowledged that the highway in front of Abbitt's was "kind of a bad spot".

Miss Reed said she saw the Goodwin car when she reached the hillcrest. The Goodwin car was then in front of a house east of Abbitt's, entirely within the eastbound (Miss Reed's) lane of the highway and coming "straight at" Miss Reed's car. Miss Reed pressed the brake pedal only "lightly" and did not blow her horn. The cars collided after Goodwin had proceeded about 45 feet west of the place where Miss Reed first saw him. The point of impact, identified by the investigating officer from a gouge mark he had observed, was 2 feet north of the southern edge of the highway and 3 feet west of the eastern edge of the driveway into Abbitt's.

Goodwin said that he did not see the Reed car until "it was right on top of me. . .". He explained that he had directed his attention "towards the filling station to make sure it was clear there", and that Gilman and he "must have looked up at about the same time".

Miss Reed "guessed" she could have "probably" avoided the accident if she had "jammed" her foot on the brake pedal when she first saw Goodwin's car, and "guessed" she was traveling at almost the same speed at the time of the collision as when she came over the hillcrest. She admitted there was "[n]othing to keep . . . [her] from turning to the left and avoiding this accident".

Hazel Pruitt Simpson was driving east on 460 behind the Reed car.

---

1. A witness said that the hillcrest was about midway between the east and west edges of the driveway into Abbitt's. Since the driveway was about 140 feet wide along the highway, this witness placed the crest at a point about 70 feet west of the east edge of the driveway. It appears from an engineer's testimony and a profile map admitted in evidence, however, that the crest was not at a point on the highway but extended along the highway for a distance of 50 feet or more.

She applied her brakes immediately before she saw the collision between the Goodwin and Reed cars, but collided with the Reed car after leaving skid marks on the highway up to 112 feet in length. The plaintiff joined Mrs. Simpson as a party defendant, but the court struck the plaintiff's evidence as to her because there was no proof that her collision with the Reed car contributed to cause Gilman's death. No error was assigned to this action of the trial court, so the judgment in Mrs. Simpson's favor is now final.

During the trial witnesses repeated statements allegedly made to them by Mrs. Simpson after the accident about the speed at which she and Miss Reed were traveling before the accident. Because counsel for Miss Reed complains of the court's refusal to strike this testimony as hearsay, we will refer to it in more detail later.

## (1)

[1] We will deal now with Goodwin's assignments of error, turning first to the question whether the evidence supported the jury's finding that Goodwin was grossly negligent in the operation of his automobile. The answer to this question is yes if reasonable men could find that Goodwin's conduct amounted to gross negligence as we have defined it: " 'Gross negligence is . . . conduct showing such indifference to others as constitutes an utter disregard of prudence amounting to complete neglect of the safety of the plaintiff guest, that is, such a degree of negligence as should shock fair minded men although something less than wilful recklessness.' " *Laughorn* v. *Eanes*, 207 Va. 584, 587, 151 S.E.2d 378, 380 (1966).

When Goodwin turned his car to the left, across the solid line and into the lane for eastbound travel, he knew or should have known that his car might not be visible to the driver of an eastbound vehicle on the other side of the hillcrest. Yet according to credible evidence, Goodwin drove his car in a westerly direction for a distance of at least 45 feet in the lane reserved for eastbound traffic, without looking for eastbound cars until the Reed car was "right on top" of him. We hold that reasonable men could find that Goodwin's conduct reflected an utter disregard of prudence amounting to complete neglect of the safety of his passenger, Gilman. See *Waller* v. *Waller*, 187 Va. 25, 46 S.E.2d 42 (1948).

Goodwin's counsel complains principally of two instructions given by the trial court. Instruction 2 reads:

"The Court instructs the jury that as the defendant Goodwin operated his vehicle west on U.S. 460 preparatory to making a left turn into Abbitt's store, it was his duty to exercise ordinary care:

(1) to keep his vehicle under proper control;

(2) to keep a proper lookout for other vehicles;

(3) to drive his vehicle as nearly as practicable entirely within the right lane and not to move from such lane until in the exercise of ordinary care he ascertained that such movement could be made with safety.

"The Court further instructs the jury that if you find from a preponderance of the evidence in this case that the defendant Goodwin failed to exercise reasonable care in any one or more of his duties set out above, then such failure on his part was negligence. And if you further believe from a preponderance of the evidence that such negligence, if any, was materially greater than a want of common prudence, and was sufficient to show an utter disregard of prudence amounting to complete neglect of the safety of his passengers [sic], and constituted gross negligence as defined in the other instructions of the Court, and proximately caused or contributed to cause the accident in question, then you should find your verdict in favor of the plaintiff against the defendant Goodwin and assess the plaintiff's damages in accordance with the other instructions of the Court."

It should be noticed that in this finding instruction the court told the jury that Goodwin owed the "duty to exercise ordinary care" with respect to (1) proper control, (2) lookout and (3) safe movement; and that Goodwin was negligent if he "failed to exercise reasonable care in any one or more of . . . [such] duties". But Goodwin did not owe to his guest-passenger the duty to exercise ordinary or reasonable care, and no recovery against Goodwin for his passenger's death could be predicated on ordinary negligence. Although the instruction set forth proper principles of law applicable to a person who owed the duty of ordinary care, the instruction was confusing to the jury in their consideration of the issue whether Goodwin was grossly negligent.

When the court instructed the jury about the duty owed by Goodwin, it should have only defined gross negligence, instead of referring to ordinary care and negligence. The court should have then told the jury that if they believed Goodwin's conduct constituted gross negligence that proximately caused or contributed to cause the

accident, the jury should return a verdict for the plaintiff against the defendant Goodwin.

Counsel for the plaintiff relies upon *Wallower* v. *Martin*, 206 Va. 493, 144 S.E.2d 289 (1965), and *Barham* v. *Virginia National Bank*, 206 Va. 153, 142 S.E.2d 569 (1965), to support the giving of Instruction 2 in this case. In those cases we disapproved instructions that told the jury the defendants were grossly negligent if they failed to exercise *slight care* in observing certain enumerated duties. We pointed out that the failure to use slight care in the performance of any one of the enumerated duties did not necessarily constitute gross negligence. So those cases involved instructions that differed materially from Instruction 2 given in this case.

However, plaintiff's counsel points to the following dictum in the *Barham* case as supporting the giving of Instruction 2 in this case: "Defendant's general duty was to exercise reasonable care; but she was liable to her guest passenger only if she was grossly negligent in failing to do so." 206 Va. at 157, 142 S.E.2d at 572. We did not intend by the use of that language to approve the giving of an instruction that in effect told the jury a driver owes to his guest-passenger the duty to exercise ordinary care. Nor did we intend to indicate that a court should instruct a jury about the duties that must be performed in the exercise of ordinary care where recovery depends upon proof of gross negligence, rather than ordinary negligence.

In the *Wallower* and *Barham* cases we disapproved the instructions as misleading and confusing to the jury because they "failed to clearly define the difference between ordinary and gross negligence". *Wallower* v. *Martin*, 206 Va. 493, 498, 144 S.E.2d 289, 293 (1965); *Barham* v. *Virginia National Bank*, 206 Va. 153, 157, 142 S.E.2d 569, 572 (1965). Instruction 2 given in this case is also misleading and confusing because it injects ordinary care standards and duties into a statement of the law respecting gross negligence.

[2] Instruction 4 reads:

"The Court instructs the jury that the duty to exercise ordinary care to keep a proper lookout requires not only the physical act of looking with ordinary care, but reasonably prudent action to avoid the danger which a proper lookout would disclose. If a person looks and does not see what an ordinarily prudent person would have seen under the circumstances in time to take the necessary precautions to avoid danger, he is as guilty of negligence as if he failed to maintain any lookout."

This instruction was confusing to the jury because the court failed to point out that it was applicable only to Miss Reed, who had the duty to exercise ordinary care. The instruction was particularly misleading in this case because the court had told the jury in Instruction 2 that Goodwin owed the duty to exercise ordinary care.

(2)

[3] The first question raised by Miss Reed is whether the evidence supported the jury's finding that she was negligent in the operation of her automobile. Reasonable men could conclude that Miss Reed was negligent in one or more of three respects—in that she failed to exercise ordinary care to keep her vehicle under proper control, to keep a proper lookout, or to operate her vehicle at a reasonable speed under the circumstances. We hold therefore that the evidence supported the jury's finding against Miss Reed.

[4] This brings us to the second question raised by Miss Reed, whether the trial court erred in refusing to strike the testimony of State Trooper Robert B. Netherland, Jr. and Kenneth E. Trabue, both of whom testified for the plaintiff. Netherland testified that when he talked to Hazel Pruitt Simpson after the accident:

> "Mrs. Simpson stated that she was traveling east on U.S. Route 460 prior to the crash, going between fifty-five to sixty miles per hour. She stated that she was [approximately one car length] behind the green 1958 Dodge—the Reed vehicle—and had been following it for a good ways. . .".

Trabue testified that when he talked to Mrs. Simpson after the accident:

> "[S]he said she was travelling at top speed [before the accident] . . . sixty-five or sixty miles per hour. * * * We [Mrs. Simpson and Miss Reed] were both doing the top speed."

No objection was made to this testimony when given. Miss Reed's counsel explains that he did not object because Mrs. Simpson was then a party to the suit and testimony about admissions made by her was not objectionable.

At the conclusion of the plaintiff's evidence and after the defendants' motions to strike the plaintiff's evidence were made and

overruled, counsel for Miss Reed rested her case. Miss Reed's counsel then "move[d] the Court to direct the jury that it shall disregard the admission made by the Defendant Simpson to the police officer concerning speed, and the admission that she made to the witness Trabue concerning speed, insofar as those admissions would impute the speed to this Defendant Reed, since the statements were pure hearsay as to this Defendant, and ought not to be considered by the jury as any evidence of speed on the part of *Mrs*. Reed". The court overruled this motion and counsel for Miss Reed excepted to the ruling. Counsel assigned no error to the court's ruling and, therefore, we will not pass upon this action of the court.[2] Rule 5:1 § 4.

When Mrs. Simpson testified on her own behalf, she said "I was going forty to fifty miles an hour [before the accident]". When Mrs. Simpson was asked whether she remembered what she told Trooper Netherland after the accident, she said: "Well, I don't remember. I said sixty-five or sixty, or something like that—but I don't recall." Mrs. Simpson said that she did not remember seeing Trabue after the accident.

At the conclusion of the defendants' evidence the court struck the plaintiff's evidence as to Mrs. Simpson. Miss Reed's counsel then moved the court to strike the testimony of Trooper Netherland and Trabue respecting Mrs. Simpson's statements to them about the speed at which she and Miss Reed were driving before the accident. The court overruled this motion. Miss Reed's counsel assigned error to the court's refusal "to strike from the evidence and consideration of the jury the testimony of the witnesses Netherland and Trabue of admissions made to them by the defendant, Simpson, after the defendant, Simpson, had been dismissed from the case, the said testimony being originally admissible only against the defendant, Simpson".

The testimony of Netherland and Trabue respecting Mrs. Simpson's statements to them about her speed was not objectionable when given, as counsel concedes, because Mrs. Simpson was then a party defendant and admissions made by her were proper evidence against her. After Mrs. Simpson was dismissed as a party defendant, the jury should have been permitted to consider Mrs. Simpson's state-

2. In effect counsel moved the court at this time to instruct the jury that they should consider the testimony respecting Mrs. Simpson's statements to the police officer (Netherland) and Trabue for only a limited purpose. For reasons to be given, we are of opinion that the jury should have been permitted to consider this testimony for only a limited purpose, as impeaching the testimony of the witness Mrs. Simpson.

ments made to Netherland and Trabue for the purpose of determining what weight should be given to Mrs. Simpson's testimony.[3] See *Butler* v. *Parrocha*, 186 Va. 426, 438-439, 43 S.E.2d 1, 8 (1947); 3 *Wigmore, Evidence* § 1017, at 684 (3rd ed. 1940). Because the jury should have been permitted to consider Netherland's and Trabue's testimony for a limited purpose, the court properly refused to strike their testimony and instruct the jury not to consider it. Miss Reed's counsel having assigned error only to the court's refusal to strike this testimony "from the evidence and consideration of the jury", the trial court committed no reversible error. Rule 5:1 § 4.

[5] Miss Reed's counsel assigned error to the inclusion of clause (3) in Instruction 3, which reads:

"The Court instructs the jury that at the time and place of the collision involved in this case it was the duty of the defendant Mary Elizabeth Reed to exercise ordinary care:

(1) To keep her vehicle under proper control;

(2) To keep a proper lookout;

(3) To operate her vehicle at a reasonable speed under all the circumstances having due regard to the width, surface and other conditions of the road then and there existing.

"And if the jury believe from a preponderance of the evidence that the defendant Mary Elizabeth Reed failed to exercise ordinary care in the performance of any one of the foregoing duties then she was negligent. And if you further believe that any such negligence proximately caused or contributed to cause the accident in question, then you should find your verdict in favor of the plaintiff against the defendant Mary Elizabeth Reed and assess plaintiff's damages in accordance with the other instructions of the Court."

---

3. Testimony of prior inconsistent statements by a witness should be received as evidence only if a proper foundation has been laid. See *Neblett, Adm'r* v. *Hunter*, 207 Va. 335, 340, 150 S.E.2d 115, 119 (1966); *Thornton* v. *Downes*, 177 Va. 451, 459, 14 S.E.2d 345, 348 (1941). But the laying of a foundation is not a prerequisite to the introduction of testimony respecting admissions made by a party. 4 *Wigmore, Evidence* § 1051, at 8 (3rd ed. 1940). So Netherland's and Trabue's testimony respecting admissions made by Mrs. Simpson, a party when the testimony was given, was properly received as evidence even though no foundation had been laid. The testimony respecting Mrs. Simpson's statments to Netherland and Trabue, having been properly received as evidence when she was a party, remained admissible after Mrs. Simpson had been dismissed as a party because it was evidence of prior inconsistent statements and could be considered as impeaching her testimony.

Miss Reed's counsel points out that the testimony of Netherland and Trabue imputing a speed of 60 to 65 miles an hour to Miss Reed was hearsay testimony as to her (see *Williams* v. *Morris, Adm'x,* 200 Va. 413, 105 S.E.2d 829 (1958)) and, therefore, there was no affirmative evidence that she was driving at a speed in excess of the legal speed limit. He contends that because there was no evidence that Miss Reed was exceeding the speed limit, the inclusion of clause (3) in Instruction 3 was erroneous.

We agree there was no probative evidence that Miss Reed was driving at a speed in excess of the legal speed limit. The testimony respecting Mrs. Simpson's statements about Miss Reed's speed was hearsay evidence as to Miss Reed and could be considered by the jury only for the purpose of impeaching Mrs. Simpson's testimony. See n. 3, *supra*. But we do not agree that the evidence did not support the inclusion of clause (3). Clause (3) does not refer to driving in excess of the legal speed limit, but refers to driving "at a reasonable speed under all the circumstances having due regard to the width, surface and other conditions of the road then and there existing".

"The determination of whether or not a certain speed is excessive has to be in large measure governed by conditions then existing and not necessarily by the posted speed limit." *Mills* v. *Wells,* 204 Va. 173, 176, 129 S.E.2d 705, 708 (1963). When Miss Reed approached Abbitt's from the west she knew that the hillcrest obstructed her view of oncoming cars, and she knew that the highway in front of Abbitt's was "kind of a bad spot" because cars approaching from the east might be "turning into the store". The evidence therefore raised the issue whether Miss Reed, who was driving 55 miles an hour, was driving at a reasonable speed under the circumstances disclosed by the evidence. Clause (3) of Instruction 3 properly submitted this issue to the jury.

Because of the error in granting Instructions 2 and 4, we reverse the judgment against Thompson W. Goodwin and remand the case against him for a new trial. Finding no reversible error in the judgment against Mary Elizabeth Reed, we affirm the judgment against her.

*Affirmed in part, reversed in part and remanded.*